# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Robins *against* Bellas.

A sheriff's sale and deed deposited as an escrow, to be delivered upon the payment of the purchase money, and suffered to remain ten years, and then delivered upon an order of the court without such payment, upon a claim that the money was payable upon a lien of the purchaser, confers no title.

A sheriff, having sold land upon a *venditioni exponas*, is not thereby estopped from claiming the title himself, as a trustee of the person as whose property he sold it.

APPEAL from the circuit court of *Northumberland* county.

John Robins, the appellant, brought this action, being an eject-ment, against Hugh Bellas, to recover the possession of three lots of land, Nos. 20, 22 and 23, situate in Augusta township of North-umberland county. Both parties derived their title from Thomas Robins, who was admitted to have been seised in fee of the lots. The plaintiff claimed, first, under a sheriff's sale of the lots, as the estate of Thomas Robins; and next, under a deed of conveyance from Jacob Seitzinger and Martin Weaver, who had become the trustees of the said Thomas Robins, under the insolvent acts.

The plaintiff, to support his claim under the sheriff's sale, gave in evidence the record of a judgment against Thomas Robins, entered for 1105 dollars 19 cents, debt, besides costs, at the suit of Pennock and Robins, in the court of common pleas of Northumber-land county, 15th November 1810, with stay of execution to the

16th April 1811. This judgment was revived afterwards by a *scire facias*, sued out in 1816, a few days before the expiration of five years from the time the stay of execution was up. After the revival of it, a *fieri facias* was issued thereon to April term 1817, by virtue of which the lots in question were taken in execution, condemned to sale, and afterwards sold, as was alleged, by Walter Brady, then sheriff, to John Robins, the plaintiff; that is lot No. 20 to himself directly, and lots No. 22 and 23 to Gideon Markle, for his use, upon an *alias* writ of *venditioni exponas*, returnable to April term 1818. This writ and the sales under it were never returned by the sheriff; but deeds, dated the 22d of August 1818, conveying lot No. 20, together with another lot, No. 21, to John Robins, and lots No. 22 and 23 to Gideon Markle, were signed and sealed by him, and found subsequently in the prothonotary's office, after the sheriff had become insolvent and left the country; with the following indorsements upon each : " 19th January 1819, acknowledged, George W. Brown, prothonotary." "Deposited as an escrow." Beside these indorsements, there was also indorsed upon the deed to Gideon Markle, "23d October 1820, tendered by Mr Hall to G. Markle." The aggregate of the purchase money mentioned in the deeds amounted to 705 dollars. John Robins, as the executor of Gilbert Robins, had a judgment, also, against Thomas Robins, which was a lien upon the lots in question, but was posterior in date to the judgment of Pennock and Robins, to the payment of which he wanted the sheriff to apply the money bid by him and Markle on the lots sold to them, and to deliver the deeds upon his giving to the sheriff a receipt for the amount, appropriating it in that way. This, however, as was alleged, the sheriff refused to do, and instead thereof deposited the deeds with the prothonotary as an escrow, until Robins should pay the money. There was no direct or positive evidence showing the precise object of the deposit of the deeds. The matter seems to have rested here until the 23d of October 1820, when John Robins moved the court of common pleas of Northumberland county for leave to take the deeds, executed by the sheriff as before stated, for the lots out of the prothonotary's office, on account of his judgment, as executor of Gilbert Robins, against Thomas Robins. This motion was entered upon the record or minutes of the proceedings of the court, but nothing more appears to have been done in relation to it until the 26th of August 1830, long after the sheriff had become insolvent and removed from the country, when the court being moved again on the subject by John Robins, made an order permitting him to take the deeds out of the office, upon his giving a receipt for the amount of the purchase money, applying it towards the payment of his judgment as the executor of Gilbert Robins against Thomas Robins. This he accordingly did on the 18th of October following, when the deeds were recorded in the prothonotary's office, and delivered up to him : and on the same day Gideon Markle, by his deed,

conveyed his interest in the lots No. 22 and 23, to John Robins, the plaintiff.

The plaintiff, again, in order to sustain his right further to recover the possession of the lots in question, showed that Thomas Robins, on the 19th of August 1818, after making an assignment of all his estate and effects to Henry Vanderslice, Jun. and Thomas Painter, obtained his discharge under the insolvent acts of this state, by an order of the court of common pleas of Dauphin county. These trustees declining to give the requisite security to enable them to take upon themselves the execution of the trust, the same court, on the 18th of February 1832 appointed Jacob W. Seitzinger and Martin Weaver trustees in their place. These latter named gentlemen, after giving the security required by the court for the faithful performance of the trust, on the 22d of June 1829, by their deed duly executed, in consideration of 5 dollars therein mentioned, conveyed the lots No. 20, 22 and 23 to John Robins, the plaintiff in this case, in trust for the children and heirs of Gilbert Robins deceased.

The defendant, then, to support his right to the possession of the lots, showed that by virtue of an *alias fieri facias*, sued out on the judgment of Pennock and Robins against Thomas Robins, to August term 1824, the three lots of land in dispute, with lot No. 21, were taken in execution again, condemned to sale, and afterwards sold, under an *alias venditioni exponas*, issued thereon to January term 1825, to Hugh Bellas, the defendant, for the aggregate sum of 263 dollars, by Martin Weaver, then sheriff of Northumberland county, and also one of the trustees of Thomas Robins. Mr Bellas afterwards, on the 4th of July 1825, without paying the purchase money to the sheriff, but upon an agreement made with him, that he should retain the amount thereof out of moneys which he, the sheriff, either had collected or was to collect, under executions in his hands, for Mr Bellas, obtained of the sheriff his deeds, conveying the lots to him in the usual form, after being duly acknowledged in open court. The defendant also showed that at January term 1821 a feigned issue was ordered and entered by the court of common pleas of Northumberland county, to determine whether the lien of the judgment in favour of Pennock and Robins against Thomas Robins had not expired before the issuing of the *scire facias* upon it in 1816, as already mentioned, for the purpose of continuing the lien. The question involved in this feigned issue was not finally settled till the June session of the supreme court at Sunbury, in 1823, when it was decided that the lien of the judgment was still in being at the time of suing out the writ of *scire facias* in 1816, and was continued and kept alive by the judgment of revival obtained thereon. The plaintiff then showed that sales of the real estate of Thomas Robins had been made by the sheriff under executions, to an amount much more than sufficient to satisfy the judgment of Pennock and Robins, out of which they had a right to have claimed that this judgment should be satisfied; but it did not appear that all these moneys had

[Robins v. Bellas.]

been paid to the sheriff, nor that Pennock and Robins had in fact been paid the amount of their judgment out of them.

The questions arising out of the facts thus given in evidence were not fully discussed in the circuit court. The judge, however, was of opinion that, under the deeds of sheriff Brady, the plaintiff acquired no title to the lots in question, and directed the jury that he could not recover under them. And as to his right under the deed of conveyance from the trustees of Thomas Robins, the judge doubted, in his own mind, with respect to its legal effect, but likewise advised the jury that the plaintiff could not recover under it; and the jury accordingly gave their verdict in favour of the defendant.

*Greenough,* for appellant. A purchaser of land at a sheriff's sale upon a satisfied judgment, with a knowledge of the fact, takes nothing by his purchase. Sanus *v.* Alexander, 3 *Yeates* 268. A title under a sheriff's sale may be questioned after a motion to set it aside. Dawson *v.* Morris, 4 *Yeates 341.* A legal payment, without actual payment, does not discharge a judgment as to the defendant. Weidler *v.* Bank, 11 *Serg. & Rawle* 134.

*Merrill* and *Hepburn,* contra. A sheriff may deliver a deed as an escrow. Catlin *v.* Jackson, 8 *Johns. Rep.* 520; Hawk *v.* Geddes, 16 *Serg. & Rawle* 28.

The opinion of the Court was delivered by

KENNEDY, J.—On the first question, whether the plaintiff acquired any title to the lots in question by means of the sheriff's deeds, the circuit court was undoubtedly right. No deed is good or can have any efficacy as such without a delivery by the party making it. And it is very manifest that in this case, Walter Brady, the sheriff, who signed and sealed the deeds, never delivered them to John Robins, the plaintiff, and Gideon Markle, or to either of them. And even if the deeds were delivered to the prothonotary by Brady, as *escrows,* to be delivered over, as is alleged, to Robins and Markle respectively, upon their paying to him or into court for him, the amount of the purchase money; still Robins and Markle, or Robins, as he claimed to be the real purchaser of all the lots, could derive no advantage from such delivery, without the condition were first complied with by them. But it is not pretended, that Robins or Markle ever paid or offered to pay any part of the purchase money: on the contrary, so far as any thing has been shown in relation to this part of the case, it would rather seem that they refused to pay. And thus the matter was given up or suffered to rest until 1820, when Robins moved the court of common pleas of Northumberland county for leave to take the deeds out of the prothonotary's office, which was not then granted. And indeed it is difficult to imagine upon what principle the court could have granted it without the condition upon which they were deposited, had first been performed.

As well might the court undertake to direct the sheriff's name and seal, in his absence, and without his consent, to be signed and affixed to a deed in order to consummate a sale of real.estate made by him, as to order a deed which had been signed and sealed by him but not delivered, or only deposited with a third person, to be delivered to the vendee on a certain condition being performed, as to order such deed to be delivered to the vendee without the consent of the sheriff, or the condition being first performed upon which it was deposited as an *escrow*. For it is just as necessary that the deed should be *delivered* by the sheriff, or by his assent, as it is that it should be sealed by him ; and without both are done, it can have no possible effect whatever. But the determination of the plaintiff not to pay the purchase money, and comply with the terms of the sale on his part, is still further evinced by him ; for on his failure to obtain an order of the court in 1820 for the delivery of the deeds to him, without paying the purchase money, he suffers the money to lie over without moving in it till the 26th of August 1830, a period of nearly ten years, while, in the mean time, the lots are levied on again and sold by a succeeding sheriff to the defendant in this case. On the 26th of August 1830, the plaintiff renews his application to the court to have an order made by it for the delivery of the sheriff's deeds to him, but still without paying the purchase money, which is accordingly granted. A delivery, however, of the deeds under this order of the court could not supply the want of a delivery by the sheriff, which was essentially necessary to perfect the execution of them, because the court had no power whatever either to *sign*, *seal* or *deliver* them in the name of the sheriff. These things all belonged to the sheriff himself to do, and to no other.

But in addition to all this, I also think it is abundantly clear that the plaintiff, from his great neglect, or rather refusal to pay the purchase money to the sheriff, and to comply with the contract of sale on his part, lost all right to claim an execution of it. He must be considered therefore as having left the sheriff or the judgment creditor at full liberty to rescind the sale made to him, and to proceed again to a re-sale of the lots. It was laid down by the court in the case of Zantzinger *v.* Pole, 1 *Dall.* 419, that if the purchaser at a sheriff's sale of land taken in execution, declines or refuses to pay the purchase money, the sheriff may return the land unsold on that account. And this principle is recognized in Friedly *v.* Sheetz, 9 *Serg. & Rawle* 164. In Negley et al. *v.* Stewart, 10 *Serg. & Rawle* 207, it was held that a sale of land taken in execution by the sheriff, unless other conditions be specified, is considered in law a *cash sale;* and that the sheriff has a right to demand payment of the purchase money without tendering a deed to the purchaser. The late Mr Justice Duncan, who delivered the opinion of the court, says, " the plaintiff in error (who in that case was the purchaser at sheriff's sale) was bound to perform his part, payment of the purchase money, *instanter*." Hence the plaintiff in this case, if not bound in

strictness to have paid the purchase money immediately upon the property's being struck down to him, was at all events bound to do so at the time when it became the duty of the sheriff to return the writ under which he made the sales. The plaintiff having refused to do this, forfeited all right afterwards to insist upon an execution of the contract. The sheriff might have returned the lots unsold. He however made no return, but signed and sealed deeds of conveyance reciting the sales, which he refused to deliver until the purchase money should be paid. These deeds were delivered by the sheriff to the prothonotary as *escrows*, that is, until some condition, believed to be the payment of the purchase money therein mentioned, should be fulfilled by the vendees. That these deeds were never delivered absolutely by the sheriff is clear to demonstration ; nor otherwise than as *escrows ;* and hence it necessarily follows that they could have no operation whatever in passing the title for the lots in question to the plaintiff until he showed that the vendees named therein had performed the condition whatever it was. *Jackson v. Cullin,* 2 *Johns.* 269.

I now come to consider the effect of the deed of conveyance made by the trustees of Thomas Robins to the plaintiff, for the three lots in question. It is proper, however, first to examine and see what title they had vested in them to these lots. As long as the sale made of the lots by the sheriff to the plaintiff and Gideon Markle respectively failed of being carried into effect, the title to them still remained of course in Thomas Robins, the defendant in the execution, for it could not be in *abeyance,* and whatever title and interest he had in the lots, became vested in his trustees appointed under the insolvent acts, subject nevertheless to all existing liens at the time. This, I think, is too plain to admit of either contradiction or illustration. For, by the operation of the insolvent acts, whatever right, title, interest or estate, whether legal or equitable, contingent or vested, qualified or absolute, Thomas Robins had in, or to real estate at the time he obtained relief under the insolvent acts, vested immediately, I apprehend, in his trustees, with full power and authority given to them to dispose of and convey the same. But it is objected, that before the trustees conveyed to the plaintiff, the defendant had become the purchaser of the lots at the sheriff's sale made to him as already stated. To this, two answers have been given. 1. That the judgment of Pennock and Robins, upon which the sale was made to the defendant, was satisfied by prior sales of other property of the defendant in the judgment, and that the defendant in this case knew the fact to be so at the time he bought the lots. And 2. That the lien of the judgment of Pennock and Robins on the lots in dispute, had expired before the levy and sale of them to the defendant. The first of these answers being of a mixed nature, partaking of law and fact, can only be decided by a jury, and therefore need not be considered here ; but the second, being one which is presented upon the face of the record of the judgment of Pennock and Robins

against Thomas Robins, contains no difficulty or question as to fact, but simply one of law, which is to be decided by the court. From the time that this judgment was revived, in the beginning of 1817, down to the suing out of the writ of *fieri facias* returnable to August term. 1824, under which the levy was made upon the lots, and upon which the sale of them to the defendant was grounded, was a period of upwards of seven years. But the act of assembly declares that the lien of a judgment shall not continue on the real estate of the defendant in it during a longer . term than five years, unless a *scire facias* should be sued out upon it within that time to revive it. It is however contended, that the lien of the judgment of Pennock and Robins was preserved and continued upon the lots in question, notwithstanding the act of assembly, because the order of the court and the pendency of the feigned issue under it, rendered it impracticable to continue the lien of the judgment by suing out a *scire facias* in the manner prescribed by the act of assembly. If this were only true, there would certainly be great force in it. But the order of the court for the trial of the feigned issue, to decide whether or not the original lien of the judgment of Pennock and Robins had expired before the suing out of the *scire facias* upon it in 1816, could not arrest or prevent them from proceeding to execution or revival of it by *scire facias* as they pleased. They are, therefore, without apology on that ground for not having continued the lien by *scire facias* in the manner prescribed by the act of assembly. If Pennock and Robins or their attorney had stuck to the first levy on the lots in question under their judgment, upon which the sales were made to the plaintiff and Gideon Markle; and instead of making another levy on them and selling under a writ of *venditioni exponas*, founded upon that levy, had issued by leave of the court a *venditioni exponas*, upon the old levy, and made another sale of the lots under it: I think it might have been good, as the lien of the judgment was in full force at the time of the first levy, and was continued by means thereof upon the lots until it was abandoned by taking out a new *fieri facias* and making another levy under it. Although this *fieri facias* was sued out improperly, and ought not to have been done without leave of the court being first obtained, inasmuch as no return had been made by the sheriff to the last *venditioni exponas*, showing that the levy upon which it issued was disposed of; yet as regards the plaintiffs in the judgment, it must be considered an act of abandonment by them of the first levy on the lots, and a relinquishment of the lien under it. Miller *v.* Milford, 2 *Serg. & Rawle* 35; Young *v.* Taylor, 2 *Binn.* 218; Eckhols *v.* Graham, 1 *Call's Rep.* 492; Amyett *v.* Backhouse, 3 *Murph.* 63. The lien upon the lots then, under the judgment of Pennock and Robins, having ceased to exist before the sale of them by the sheriff to the defendant in this case, it is clear that such sale could not divest the trustees of Thomas Robins of their title and right in the lots to dispose of them under the trust.

It has also been objected that the trustees at least acquiesced in, if

[Robins v. Bellas.]

they did not approve of the sheriff's sale of the lots to the defendant; and that they were thereby estopped from disposing of the lots afterwards. As evidence of this, it was shown that Martin Weaver, the sheriff, who sold the lots as such to the defendant, was one of the trustees of Thomas Robins at the time, and made no objection.. He however, it must be recollected, was an officer of the law, was commanded by a precept directed to him for that purpose to make the sale, and was bound to obey it. His interest and concern with the lots as a trustee were all upon record, and his power or authority over the lots as such must therefore be presumed to have been known to the defendant, and perhaps from his superior knowledge and experience in the law as a professional gentleman, may have been better known than to the sheriff. And as evidence of Jacob Seitzinger, the other trustee's acquiescence, it was shown that these same lots had been levied on under a judgment at the suit of      Hart against Thomas Robins, and that the sheriff, on a *venditioni exponas* issued thereon to January term 1824, returned that he had sold the lots to Jacob Seitzinger, but he refusing to pay the purchase money for them, therefore he returned them *unsold*. If this proves any thing beyond the mere fact that Seitzinger was unwilling to complete the purchase of the lots, it shows in the absence of proof of every other reason for his declining the purchase, that it was because he could obtain nothing by it, being already a co-trustee, invested with the legal title to them. Or it may be, for aught that appears to the contrary, that the sale of these lots at that time, under Hart's judgment, would have been good ; and that Seitzinger, for some other reason, refused completing the purchase. Be this as it may, there is no ground for saying that his bidding for the lots at a sale by the sheriff under Hart's judgment shall conclude or estop him from asserting and exercising his right afterwards over them as trustee.

Martin Weaver and Jacob Seitzinger, then, as trustees of Thomas Robins under the insolvent acts, being invested with the legal title to the lots, and the lots having become released from the lien of the judgment of Pennock and Robins, it cannot be questioned, I think, but that they might have maintained an action of ejectment for the recovery of the possession of the lots against the defendant, had they not conveyed them to the plaintiff. The deed of conveyance then, from these trustees to the plaintiff, unless it is to be regarded as an absolute nullity, is certainly sufficient to enable him to maintain this action ; and as nothing was shown on the trial going to impeach or annul it, the judge ought to have advised the jury to this effect. The verdict and judgment of the circuit court are therefore set aside, and a new trial granted.

New trial granted.