CHARLES G. EVERTS, Appellant,

*vs.*

EVERY AGNES and LYMAN P. SWIFT, Appellees.

APPEAL IN EQUITY FROM DECREE OF THE CIRCUIT COURT OF MILWAUKEE COUNTY.

It would seem that the fraudulent procurement of a deed deposited as an escrow from the depositary, by the grantee named therein, will not operate to pass the title, and a subsequent purchaser of such grantee for a valuable consideration without notice, derives no title thereby, and will not be protected.

To entitle a party to protection as a subsequent *bona fide* purchaser, he must make a full statement of the facts and circumstances of his case and of the consideration paid.

It is not sufficient that a subsequent purchaser has purchased for a valuable consideration without notice, but *the* consideration must actually *have been paid* before notice; and if a part of the consideration only has been paid before notice, the purchaser will be protected only *pro tanto*.

The mere averment that a party is a purchaser for a valuable consideration without notice, and that the consideration is paid, is not sufficient, the *actual consideration paid* and when and how paid must be also stated.

An answer defective in substance is not aided by replication, and the proofs produced at the hearing cannot enlarge the defence set up in the answer.

The defendant made party to a bill filed for a specific performance, set up as a defence, that he was a subsequent *bona fide* purchaser, for a valuable consideration without notice (by way of answer, instead of a plea), without stating the actual consideration, its character or amount: *Held,* that the answer was defective, and that it was not aided by the 34th rule in equity of the Circuit Court.

The complainant is not bound to except to an answer defective in substance (unless he desires a more full discovery), and the defence will be confined to the allegations of the answer, notwithstanding a replication be filed; and notwithstanding the answer may come within the operation of rule 34 of the Circuit Court in equity.

Delivery is essential to the validity of a deed, and such delivery must be voluntary.

The delivery of an escrow by the depositary, to the grantee named therein, without a compliance with the conditions, is not a delivery with the assent of the grantor and conveys no title.

The authority of the depositary of an escrow is limited strictly to the conditions of the deposit, a compliance with which, alone justifies a delivery.

THE bill alleges that some time previous to 1851, complainant Everts was seized in fee of the equal undivided one-half part of certain real estate in Milwaukee county, which had been for-

merly purchased by complainant and one Peter Bender of Agnes; and that being so seized, complainant made a written agreement, on the 31st of May, 1851, with said Agnes, to convey to him complainant's said interest in said premises, and the mill thereon, for the consideration of five hundred and seventy-five dollars, and one thousand feet of butternut boards; "said boards to be paid soon," fifty dollars down, fifty dollars in September then next following, three hundred dollars in one year from the date of said agreement, and one hundred and seventy-five dollars in two years therefrom, with interest at ten per cent. unless all paid within four months, and security to be given for the payment if not paid down; and said Agnes to settle all claims against the said complainant for which the property conveyed was holden, and to clear said complainant's land on the lake.

The bill further alleges, that in pursuance of said agreement, on the 2d day of June, 1851, complainant made, and he and his wife executed a quit-claim deed to Agnes of the said premises, and showed the same to Agnes for him to determine whether it was such a deed as he would accept; and at the request of said Agnes, he allowed him to take said deed to one Peter Bender, for said Bender to determine whether he ought to accept it, promising, if Bender said it was right, to accept it, and if not, to return it, the complainant informing Agnes at the time, that a full description was not given in the deed, and promising to complete it in case it was otherwise defective. That after going to Bender with the deed, Agnes informed complainant, that it was not such a deed as he could accept, and requested complainant to go to one F. F. Zettler, where a new deed was drawn and the first one returned, the second being deemed satisfactory by all concerned.

The bill further alleges that the second deed was executed by complainant and wife, and was delivered by complainant to said Zettler, with instructions not to deliver it to Agnes until Agnes should execute and deliver his notes and mortgages on his real and personal property to secure the payment of the consideration; also, that complainant delivered to said Zettler, together with said deed, a bond or article of agreement, binding the said complainant to pay about one hundred and fourteen dollars on a certain mortgage, on said property, for twelve hundred dollars,

subject to the balance of which mortgage said Agnes purchased said premises, such bond or article of agreement to be delivered to Agnes by Zettler on the same conditions as the deed.

The bill further alleges that thereafter, Agnes fraudulently obtained possession of the deed and bond, by inducing Zettler to deliver them up, and put said deed on record, without making any payment or offering any security; and that afterwards, in order to defraud complainant, Agnes conveyed the property to the defendant Lyman P. Swift, who took the conveyance fraudulently with notice of the manner in which the deed had been procured by Agnes, and of complainant's rights.

The prayer of the bill was for the setting aside and cancelation of the conveyances, and for specific performance by Agnes and general relief.

To this bill both the defendants made their separate answers.

The answer of the defendant Agnes, admits the execution of the alleged agreement; claims that in pursuance thereof, complainant executed and delivered the first deed mentioned in the bill, to Agnes as his deed, and that he (Agnes) accepted it as such, but claims that, as he did not understand English very well, he obtained a promise of the complainant, before leaving his home, that if upon examination, the deed should be found defective, he should have another; it sets up that the deed was a quit-claim deed; that on showing it to Bender, he decided that the description of the premises was too general and indefinite; that the record deed was drawn by Zettler under Bender's di-rection; that Everts came there, and while the second deed was being drawn, took up the first deed, and that he (Agnes) demanded it back, saying that he would not give it up till he got the new one, and that Everts accordingly gave it to Zettler to be retained until the new one was delivered.

The answer further states that the second deed conveyed the undivided half of the mill property (therein described) to Agnes, subject to a portion of a certain mortgage executed by Everts and Bender, to the amount of about ten hundred and eighty-five dollars; and that it was agreed by the parties that Everts was to execute and deliver to Agnes, together with the new deed, a bond, requiring him to pay about one hundred and fourteen dollars, balance of the principal of the mortgage and interest.

That he (Agnes) gave the new deed, which had been assented to by Everts, to Zettler, to take to Evert's house and get it executed and acknowledged, and also gave him the first deed, with express instructions not to give it up to Everts till he got the new one, and the bond. The answer further states upon information, that Zettler had the new deed executed, gave up the old one, and gave a receipt to Everts for the new deed, expressing that it was to be given up to Agnes on the performance of certain conditions, to said Agnes unknown; that this took place on the 3d day of June, 1851; that he (Agnes) immediately thereafter entered into possession and worked the mill with Bender, till he sold out to Swift; denies the allegations of the bill concerning the execution and delivery of the deed, except as above stated; says that in October following he (Agnes) persuaded Zettler to go to a lawyer (Doran), who on a statement of the facts, advised Zettler, that he had no right to retain the deed, and that Zettler thereupon gave it up, and that it was put on record. The answer further denies all misrepresentations to Zettler to induce him to give up the deed; claims that the delivery of the first deed was complete and unconditional, and that his acceptance of it was the same; that the promise of the complainant to make a new one was after such delivery and acceptance, and at his (Agnes') request; denies that he agreed to give security by note or mortgage, or any other security except his own responsibility; admits the sale to Swift of a part of the premises in October, 1851, but denies ever to have informed Swift of the facts concerning the execution and delivery of the deeds from Everts.

The answer sets up further, that it was understood between the parties at the time of the first agreement, that Everts owned an undivided half of a tract of about sixty-five acres adjoining the mill, and that this was also to be conveyed by Everts as a part of the mill property; alleges that this tract was bought partly with funds raised by mortgage on the mill by Everts and Bender for their joint use, but that the conveyance was taken to Bender alone; alleges that it was on the faith of having half of these sixty-five acres that he made the agreement with Everts, and that without this the mill property conveyed to him by Everts was not of the value of the consideration agreed to be paid by him, and that for the want of a conveyance of this, he had been

damaged, &c., and submitted that he ought not to pay the consideration agreed. on till such a conveyance was executed and delivered by complainant; denies all fraud, combination, &c.

The answer of Swift admits, that some time in October, 1851, he purchased of Agnes the property in controversy; alleges that he paid to Agnes without fraud, a good and valuable consideration, according to a contract made between them, and took from Agnes and wife a conveyance -in the usual form of a warranty deed, purporting to convey the premises free of all incumbrances, except that created by part of a certain mortgage for something over ten hundred dollars, owned by one Alfter, which deed is alleged to be on record in Milwaukee county, and ready to be produced, &c.

The answer further alleges that Agnes invariably represented to Swift, that during all the negotiations for the purchase, that he (Agnes) had a perfect title, and good right to convey the premises free of incumbrance except said mortgage of Alfter. Also, that Swift before the purchase by him, caused the records to be examined by Waldo & Ody, attorneys, who kept an abstract of titles in said county, and that the records showed that the representations of Agnes were true, and gave no evidence of any such claim or lien as was set up by complainant; also, that during the negotiations Swift visited said mill property, and saw Agnes in possession, and heard Agnes and Bender remark incidentally, that they had been working the mill together, all summer, since Agnes bought of Everts. That he also thinks that at some one of his visits, he saw complainant at or near the mill, but alleges that never, at any such time or at any other time before the date of the deed by Agnes to him, or of the record thereof, the defendant Swift was informed by Bender, or Agnes, or Everts, or any other person, of any such lien or claim against the said premises, as was set up by complainant, or of any imperfection in the title of Agnes, or of any circumstances showing, or tending to show, any fault or imperfection in the title of Agnes, except the mortgage to Alfter.

The answer also denies that the defendant Swift had any knowledge, information or intimation, at the time when he made such purchase and took said conveyance, of the manner in which the deed from Everts to Agnes was left with Zettler, or of the

manner in which Agnes obtained possession of it, or of any fraud or wrong on the part of Agnes, or of any conditions to be complied with to complete his title, or that Everts had never delivered the deed.

The defendant Swift further alleges in his answer, that "until after he had made the purchase and taken the deed from Agnes," he never was informed of the written contract between Agnes and Everts, but since the commencement of this suit he had seen a copy, and also the deed from Everts to Agnes, and denies that by the contract there are any reservations, conditions or clause in the deed, reserving to the complainant such rights as he claimed.

The answer alleges further upon information and belief, that from the time of the sale from Everts to Agnes, in June, 1851, Agnes was in possession, holding himself out as owner, and that complainant was never heard to set up his claims until after Swift had obtained and recorded his deed and paid the consideration, all of which occurred on or about the 8th day of October, A. D. 1851.

The answer also denies the statements of the bill in relation to the delivery of the first deed from Everts; claims that it was delivered absolutely, and makes substantially the same allegations concerning it as are made in the answer of Agnes; alleges that the second deed from Everts to Agnes was put on record about the 8th day of August, 1851, and that from that time till the purchase by Swift in October, 1851, Everts commenced no suit to maintain his rights, if any he had, and has lost them by laches, &c.

The proofs produced at the hearing sustained the allegations of the bill, so far as Agnes was concerned; that he obtained the deed from Zettler by undue and fraudulent means, without attempting to perform the conditions upon which it was deposited. But the evidence did not bring notice home to Swift.

The decree of the Circuit Court dismissed the bill as to Swift, and required Agnes specifically to perform the contract on his part with the complainant, or show cause why an attachment should not issue, &c.

From this decree the complainant appealed.

The several points made on the argument and determined by the court are noticed in the opinion in order.

*Paine & Sons*, for complainant.

*Waldo & Ody*, for the defendant (Swift).

*By the Court*, SMITH, J.   It is hardly possible to dispose of this case without recapitulating some, and perhaps most of the material allegations and facts involved therein; yet with the statement of the case which will precede the conclusions to which we have here arrived, and which will fully appear in the report of the case, it is only necessary to recur to them incidentally as the discussion of the principles involved, and of the points argued, shall seem to require.

On the 31st day of May, A. D. 1851, a written memorandum, very informal and incomplete, was entered into between the complainant, Everts, and the defendant Every Agnes, for the sale of the premises described in the complainant's bill of complaint. Whether or not that written memorandum would be sufficiently definite and certain to authorize or enable a court of equity to decree a specific performance thereof, is not absolutely necessary to inquire.   It is, however, worthy of remark, that from that memorandum alone, it would be difficult to settle definitively the rights of the parties thereto.   It is sufficient for the purposes of this case, to say that it conveyed no title by Everts, nor did Agnes obtain any title thereby; at most an equitable interest in the land, upon the performance of the conditions or stipulations therein contained, on his part to be performed, and that he had, and could have had, no legal rights conveyed by Everts in conformity with the memorandum or otherwise, whatever his equitable rights may have been.   It is apparent that the defendant Swift did not purchase any equitable right or title as such, which Agnes may have had by virtue of the contract; but whatever he did purchase, was such interest, title or estate as Agnes had in the premises, by virtue of his *record* or *paper* title under the deed of Everts to Agnes, made and recorded as set forth in the pleadings.

It is not necessary, therefore, to inquire what would have been

the equitable rights of the defendant Swift, had the interest of Agnes derived by virtue of the written memorandum or contract before mentioned, been assigned to him, and had he been the purchaser under the same, and had relied thereon in his answer. But he, Swift, derives his title solely from the deed of Agnes to him, conveyed through the deed of Everts to Agnes, without any knowledge or consideration of, or reliance upon the written contract or memorandum before mentioned, and bases no claim thereon. So far, therefore, as Swift is concerned, he stands precisely in the same condition as he would have done, had no written contract ever existed between the parties, Everts and Agnes. It is true that Swift admits in his answer the said agreement, and avers that in pursuance thereof Everts executed a deed conveying the title, but he sets up no claim under this alleged deed, nor any equitable considerations growing out of the original contract. He claims by virtue of his deed from Agnes and the deed of Everts to Agnes. On them, and them alone does he base his rights and interests, and by them are they to be adjudicated.

For the purposes of this case it is wholly immaterial whether the defendant Agnes was in a position entitling him to demand a conveyance from Everts or not. Were we to express an opinion upon that subject, perhaps it would not go far to aid either of the defendants. The conveyances under which Agnes pretends to claim, are voluntary, in contradistinction to those decreed to be executed upon a bill for specific performance. The deed or deeds, therefore, executed by Everts to Agnes, must be considered precisely the same as though no previous contract or memorandum had existed, so far as their operative effect upon the defendant Swift is concerned.

We regard the making and delivery of the two deeds as but one continuous act, having its consummation in the deposit of the last deed with Zettler. We do not think, as is claimed by the counsel for the defendant, that any title passed by the first deed. It was rather an attempt to convey the premises, which was abandoned for another, and, as was supposed, better and more perfect form. The rights of the parties, whatever they are, must therefore depend upon the effect of the last deed, and their respective relations to it.

We think that there can be no doubt that the fraudulent means

used by Agnes to get possession of the deed from Zettler, the depositary, are such as effectually preclude him from deriving any benefit from it. 'The testimony on this branch of the case is satisfactory. The deed was left with Zettler as an escrow, with instructions not to be delivered until certain securities should be given by Agnes. Until the performance of the condition, it was, and must remain, a mere scroll in writing, of no more efficacy than any other written scroll; but when, upon the performance of the condition, it is delivered to the grantee or his agent, it then becomes a deed to all intents and purposes, and the title passes from the date of the delivery. The delivery, to be valid, must be with the assent of the grantor. These are familiar principles and do not require the citation of authorities to sustain them. If the grantee obtain possession of the escrow without performance of the condition, he obtains no title thereby, because there has been no delivery with the assent of the grantor; which assent is dependent upon compliance with the condition. The assent of the latter is withheld until the condition is performed. The obtaining of it by fraud, larceny, or any means short of performance of the condition, is against the assent of the grantor; and as this assent is essential to delivery, and a delivery is essential to the validity of the deed, it is difficult to perceive how Agnes ever obtained any title whatever to the premises, and of course, equally difficult to perceive how he could convey any, by any conveyance which he might execute to another. The recording of an escrow does not make it a deed. Suppose Zettler had procured the deed to be recorded, and Swift had purchased of Agnes on the faith of the record title, without any delivery of the deed to Agnes, will it be claimed that Swift in such case would have obtained title? How is the case made better by the wrongful possession of the escrow by Agnes, obtained without the consent of Everts, and hence without any delivery to him? It is true, all this might be done and Swift, the purchaser, be quite innocent of any wrong. It is also true, that either Everts or Swift must suffer by the fraud of Agnes, the latter being unable to make reparation. But which has the prior or superior equity? Everts asks that he shall not be divested of his estate without his consent. Swift asks not only that Everts may be thus divested, but that he, himself, may be invested with

it. It is quite apparent that the superior equity is with him who had the original title, with which he has never voluntarily parted. Swift has his remedy upon the covenants of his deed from Agnes. But were the equities equally balanced, the legal title must prevail. That the legal title never passed from Everts, we think is clear, both from reason and authority. 2 *Blk. Comm.* ; 4 *Kent Comm.* 459; 5 *Greenlfs. Cruïse, title Deed,* 45, 46; *Jackson vs. Catlin,* 2 *John. R.* 248; *Same vs. Same,* 8 *id.* 429, 431; *Frost vs. Beekman,* 1 *Johns. Ch. R.* 296; *Jackson vs. Howland,* 6 *Wend.* 666; *Carr vs. Hoxie,* 5 *Mason,* 60; *Jackson vs. Sheldon,* 9 *Shep.* 569; *Robbins vs. Bellas,* 2 *Watts,* 359; 1 *Story's Eq. Juris.* §§ 75, 76; *Somes vs. Brewer,* 2 *Pick.* 184; *Worcester vs. Eaton,* 11 *Mass.* 375.

But it is contended that Swift is entitled to protection as a *bona fide* purchaser without notice. This has been a point of some difficulty. We have not been referred to, nor have we been able to find, an authority directly in point. We are aware that courts of equity go to great lengths to protect a *bona fide* purchaser for a valuable consideration without notice. The plaintiff cannot set up the fraud of his grantee in procuring a conveyance, to defeat the title of a subsequent *bona fide* purchaser. But such, and all the cases referred to, differ from the case at bar, in the important fact that in all of them the conveyance was perfected by the voluntary act, and with the assent of the grantor. He made the sale. He executed and delivered the deed, or caused the same to be done. All these acts were perfectly voluntary on his part, and no matter what fraudulent representations may have induced him to do these acts, an innocent third person shall not be made to bear his misfortune, or suffer for his credulity. Cases of this kind are numerous, and the principle on which they all depend is an equitable one. But they all depend, nevertheless, upon the fact, that the party voluntarily parted with his property and executed and delivered the evidences of its alienation. Not so, however, in the case of a forged or stolen deed. The reason is obvious. In the latter case there is no assent of the alleged grantor. There is no delivery.

It is erroneous to suppose that Everts delivered the deed to Zettler for Agnes, and thus made Zettler his agent, and is there-

fore bound by his acts. If the depositary of an escrow can be considered the agent of the depositor at all (which we very much doubt), he is only such within the scope of his authority. He is as much the agent of the grantee as of the grantor. He holds the scroll for both, to be delivered on performance of the condition. He is as much bound to deliver the deed on performance of the condition, as he is to withhold it until performance. The act of delivery cannot be considered the act of the grantor until the condition be complied with. Without such compliance there is no assent to the delivery. To obtain the deed or scroll from the depositary without such compliance, is as much against the assent of the grantor, as it would be to take it from the desk or drawer where the grantor had deposited it, without his knowledge or consent. It would seem, therefore, that there is a great and fundamental distinction between the case where by fraudulent representations a person is induced to execute and deliver a deed, and one where the deed or scroll is obtained from a depositary without the knowledge or consent of the depositor or compliance with the conditions on which the delivery depends.

It would seem that where a deed deposited as an escrow is obtained without performance of the conditions, by operating upon the fears or credulity of the depositary, or by fraudulent collusion with him, or by other undue means, it bears a closer analogy in principle to the case of a forged or stolen deed, than it does to that of a fraud practiced directly upon the grantor, by means of which he is induced to deliver it. In the latter case the legal title passes, and a subsequent *bona fide* purchaser is protected. In the former no title passes whatever, and a subsequent purchaser is not protected. In the one class of cases there is the voluntary assent of the grantor; in the other there is no assent at all.

If this reasoning be correct, the better opinion would seem to be, that the fraudulent procurement of a deed deposited as an escrow, from the depositary by the grantee named in the deed, would not operate to pass the title, and that a subsequent purchaser for a valuable consideration without notice, would derive no title and would not be protected.

But it is contended by the counsel for the complainant, that the defendant Swift does not show himself, by his answer, to be

a *bona fide* purchaser. If this be so, we are relieved from the necessity of deciding directly the other question. The answer of Swift alleges, " that he paid to Agnes without fraud, a good and valuable consideration according to a contract then made between them, and took from Agnes and his wife a conveyance in the usual form of a warranty deed," &c. The answer nowhere alleges what the consideration was, how much, if anything, was paid, or when paid, though it does state, upon information and belief, that from June, 1851, "the complainant was never heard to set up his claims until after said Swift had obtained and recorded his deed and paid the consideration, all of which occurred on or about the 8th day of October, A. D. 1851."

To entitle a party to the protection which a court of equity extends to a subsequent *bona fide* purchaser, he must make a full statement of all the facts and circumstances of his case, so that the court may be able to do perfect equity between the parties. It is not sufficient to allege that he has purchased for a valuable consideration without notice, but the consideration must have been actually paid before notice. And if a part of the consideration only, has been paid before notice, he will be protected only *pro tanto*. Hence it is necessary that the actual consideration be stated, and the amount actually paid. The mere averment that he is a purchaser for a valuable consideration, and that the consideration is paid, is not sufficient, and no instance, it is believed, can be found where such a statement in an answer has been held sufficient. *Story's Eq.* § 64 *et seq. and cases there cited; White and Tudor Eq. Ca.* 77; *Story's Eq. Pl.* §§ 28, 806, 852. *et seq.*

But it is contended by the counsel for the defendant Swift, that even if his answer is not sufficient in this respect mentioned, "it was too late to take advantage of an exception on that ground at the hearing on bill, answer, replication and testimony filed, that the point should have been raised before issue joined, the answer of Swift claiming to be an innocent purchaser, &c., is in the nature of a plea in bar (under rule 34 of the Circuit Court in equity), and the complainant, by filing his replication thereto, has admitted it to be good, even though it be, on its face, irregular in form or defective in substance," and he cites *Mitf. Ch. Pl.* 302, 303.

This point has been carefully considered and on reference to the authority cited from Mitford, it seems to sustain the text, though the reasons for it are not so apparent, and none are attempted to be offered. The rule there laid down is, that where a defence is interposed by plea, and the plaintiff takes issue upon it, instead of setting it down for hearing, and the defendant proves the allegations of the plea, the bill must be dismissed, however defective the plea may be either in form or substance. This doctrine, however, even if true, applies only to a plea. It does not apply to an answer. The defendant must stand by his answer, and though replication be put in, the defendant can claim no more than he has set up in his answer, any more than the plaintiff can be allowed to depart from the case made by his bill. If the answer be defective in substance, the replication does not make it better. Some facts may be sufficiently stated, and material, so as to render it necessary to take issue upon them, while others may be immaterial or defectively averred, and require no denial. It is true, the plaintiff may except to such part of the answer, but it is not essential that he should do so, unless he desires a further discovery. Therefore, even if the rule in regard to pleas be as stated, it does not apply in general to answers.

But it is contended that our 34th rule in equity brings the answer in this case under the rule applicable to pleas, cited from Mitford as before quoted. This rule is as follows:

" The rule, that if a defendant submits to answer he shall answer fully to all the matters of the bill, shall no longer apply in cases where he might, by plea, protect himself from such answer and discovery. And the defendant shall be entitled in all cases by answer, to insist upon all matters of defence (not being matters of abatement or to the character of the parties, or matters of form), in bar of, or to the merits of the bill, of which he may be entitled to avail himself by a plea in bar ; and in such answer he shall not be compellable to answer any other matters than he would be compellable to answer and discover upon filing a plea in bar, and an answer in support of such plea, touching the matters set forth in the bill to avoid or repel the bar or defence. Thus, for example, a *bona fide* purchaser for a valuable consideration without notice, may set up that defence by way of answer instead of plea, and shall be entitled to the same protec-

tion, and shall not be compellable to make any further answer or discovery of his title than he would be in any answer in support of such plea."

We do not think that this rule has the effect which is claimed for it. Undoubtedly, the defendant Swift might have interposed his defence by way of plea, and then the practice would have been conformable to the rule in such cases, and he would not have been compelled to answer other parts of the bill further than would be necessary in support of his plea. But he chose to answer, and under the old rule, having submitted to answer at all, he would be compelled to answer all the parts of the bill, and had he failed to do so, his answer would be subject to exception. Now, this 34th rule protects him from liability to such exception, and he is not compelled to make any further discovery than he would have been, had he pleaded. But if he adopts the mode suggested by this rule and answers, though he may not be compelled to answer fully, yet he must answer sufficiently as far as he goes, and the answer, as far as it goes, must be judged by the same rule as in other cases. Though the taking issue upon a plea may be an acknowledgment that it is good, it is not so with an answer. A plea may be set down for hearing on objection to its sufficiency as a defence, but exceptions are not taken to an answer, unless the complainant requires a more full discovery, by probing still further the conscience of the defendant. We think, therefore, that the protection afforded by the 34th rule aforesaid, extends only to the consequences which, under the old rule, would ensue, had the defendant failed to answer all the parts of the bill, but that the principles of adjudication upon a cause heard upon bill, answer, replication and proofs, are in no wise changed. The answer under this rule, is an answer still, and not a plea, and must be adjudicated upon as such. Very many illustrations might be given to show the correctness of this interpretation put upon this rule, but it seems so obvious that it is hardly necessary to refer to them. To give to the rule the operation and effect here claimed for it, would be to unsettle all the established rules of practice, and, instead of making it what it was designed to be, a relief and protection to the defendant, it would become a snare to entrap the unwary complainant.

Again; it is said that the plaintiff though otherwise entitled to relief, has lost all right or claim thereto by his own laches. The deed or escrow was delivered by Zettler to Agnes, and recorded the 18th day of August, 1851, and the bill was filed in April, 1852. We do not think there was unreasonable delay on the part of the plaintiff, or that he can, under the circumstances, be justly chargeable with laches.

What we have said in relation to the rights and equities of Swift, renders it unnecessary to discuss the case of Agnes. We think the decree of the court below is erroneous, and should be reversed. We are also of the opinion that the answer of Swift fails to place him in the condition of a *bona fide* purchaser without notice, and that the complainant is entitled to relief.

The decree of the court below must be reversed, and the cause remanded, for further proceedings, in accordance with this opinion.