A. G. HARKREADER *v.* T. J. CLAYTON, ADMINISTRATOR, ET AL.

1. DEED. *Delivery.   Acceptance.*
   A deed becomes absolute and effectual, by delivery by the grantor and acceptance by the grantee, and the acceptance may be express, or implied from circumstances; but until delivery the instrument is not the grantor's deed.

2. SAME. *Escrow.   Condition.   Second delivery.*
   A written instrument signed, sealed, and acknowledged by the grantor, and by him delivered to a third person, to be by such person delivered to the grantee upon the happening of some future event, is an escrow, which takes effect upon the second delivery ; and if the grantee obtains possession of it before the event happens, the grantor may avoid it on the plea of *non est factum.*

3. ESCROW. *Delivery.   Relation back.*
   While the estate does not pass until the second delivery, in the case of an escrow, yet in some instances, to prevent a failure of justice, — as, where the grantor dies before the second delivery, and the like, — the deed will be held to relate back to the first delivery.

4. SAME. *Payment to agent. Void delivery.*
    Where the obligor in a bond for title sends the deed, signed, sealed, and acknowl-
    edged, to a third person, to be delivered to the obligee in said bond when the
    latter shall have paid the purchase-money, and such obligee, without having
    paid such purchase-money, surreptitiously obtains possession of the deed, it is
    void; and if such obligor, and also such third person, are both dead when said
    deed is obtained by the obligee, who, purchasing the land conveyed under a
    void chancery decree, pays the purchase-money to an attorney-at-law employed
    by such third person, while alive, to enforce specific performance of the bond
    for title, who pays said money to the administratrix of such third person, so
    that it never comes to the heirs or the representatives of the obligor in the
    bond for title, such payment is unauthorized, the condition never performed,
    and the escrow in the hands of the obligee in the bond for title is absolutely
    null and void.

5. BONA FIDE PURCHASER. *Escrow. Equities.*
    No title vests in the grantee who obtains possession of an escrow without the
    performance of the condition, but the legal title remains in the grantor, or, if
    he is dead, in his heirs; and as one, to maintain the plea of an innocent pur-
    chaser, must have acquired the legal title which he thus seeks to protect
    against some undisclosed equity or charge on the land, a purchaser from such
    grantee cannot maintain the plea of a purchaser *bonâ fide*, although he bought
    on the faith of the grantor's possession of the escrow deed; but on the contrary,
    the original grantor has the legal title, and the grantee having no legal title,
    can convey none; while the equities of such second grantee, and of the heirs of
    the original grantor, being equal, or the equities of such heirs being superior,
    the legal title, which still remains in such heirs, will prevail.

6. TAX SALE. *Wrong day. Title void.*
    A tax sale on August 7, 1871, for the taxes of 1870, being on an improper day, is
    void.

7. VENDOR AND VENDEE. *Vendee purchasing tax title.*
    The obligees in possession under a bond for title, as purchasers of land, cannot
    acquire a tax title thereto and set it up as adverse and paramount to that of
    the obligor in the bond for title under which they entered.

APPEAL from the Chancery Court of Lee County.

Hon. LAFAYETTE HAUGHTON, Chancellor.

The case is stated in the opinion of the court.

*Houston & Reynolds*, for the appellant.

1. The testimony shows that Wiley delivered his deed to
Drane as an escrow, to be delivered to the Merritts upon the
contingency of their paying the note for the purchase-money,
which note Drane also held for collection, with authority either
to collect in person or through attorneys ; and that the money

was paid and the deed delivered. In such case, the deed relates back to the first delivery, so that the intervening death of the grantor cannot affect the passing of the title. *Whitfield* v. *Harris*, 48 Miss. 719; *Simpson* v. *McGlothney*, 52 Miss. 723. The depositary of the deed is the agent of both the grantor and grantee. *Wheelwright* v. *Wheelwright*, 2 Mass. 446; *Foster* v. *Mansfield*, 3 Metc. on Con. 472; *Frost* v. *Bukman*, 1 Johns. Ch. 288; 3 Washb. on Real Prop. 272; 4 Cruise on Real Prop. (Greenl.), sects. 73, 74; Shep. Touch. 58, 59.

2. The Merritts having possession of the escrow deed when Harkreader purchased for full value, without notice, the latter is an innocent purchaser. It is only required that the title purchased be apparently good and perfect at law. *Withers* v. *Cooper*, 24 Miss. 208; *Walton* v. *Hargrove*, 42 Miss. 27; *Perkins* v. *Swank*, 43 Miss. 358; Amb. 293. A *bonâ fide* purchaser, for value and without notice, may defend under his title when he could not enforce it in equity. *Beekman* v. *Fisher*, 18 Johns. 544; 1 Story's Eq. Jur., sects. 410, 411. The rule, in such case, is founded on principles of public policy. *Wayland* v. *Lee*, 9 Ves. 24; 1 Story's Eq. Jur., sects. 409, 411; *Lee* v. *Portwood*, 47 Miss. 109; *Lusk* v. *McName*, 24 Miss. 60; Story on Sales, sect. 159. It applies to real and personal property alike. *Wyse* v. *Dandridge*, 35 Miss. 688. Where one of two innocent parties must suffer damage, it must fall on the least diligent, if their positions are distinguishable; but if not, they must be left to their legal remedies. 1 Greenl. on Ev., sect. 207; *Dickson* v. *Green*, 24 Miss. 618; 1 Johns. Ch. 373; 1 Story's Eq. Jur., sect. 387; *Divoll* v. *Leadbetter*, 4 Pick. 219.

3. If the deed from Wiley to the Merritts was delivered by Drane, Wiley's agent, to Tucker, Green & Pickens, attorneys, to be delivered to the Merritts upon the payment of the purchase-money, Wiley and his representatives are estopped, as against a *bonâ fide* purchaser, to set up any claim inconsistent with the deed, even though it may have been improperly de-

livered to the Merritts. *Resor* v. *Ohio & Mississippi R. Co.*, 17 Ohio St. 139. This is upon the principle that, where one of two innocent persons must suffer, he must bear the loss who, by his carelessness or confidence, has been the means of enabling the other to be deceived.

4. A deed deposited with an attorney to be delivered to the grantee, upon the payment of the purchase-money, or other condition, is an escrow, whether it is called so or not. *State Bank* v. *Evans*, 15 N. J. L. 155 ; *Jackson* v. *Sheldon*, 22 Me. 569 ; *Jackson* v. *Catlin*, 2 Johns. 248 ; *Robbins* v. *Bellas*, 2 Watts, 359.

5. If the deed was. delivered to the attorneys as an escrow, to be delivered to the Merritts upon the payment of the purchase-money to the attorneys, and after the death of Wiley the purchase-money was paid and the deed delivered, the title vested in the Merritts, even though they knew of the death of Wiley. In such case, the deed takes effect by relation, in respect to the title, from the original delivery, and its effect is not impaired by the death of the grantor. 2 Minor's Inst. 659 ; 2 Lomax's Dig. 37 ; 3 Preston on Abst. Tit. 63 ; 3 Co. Inst. 352 ; *French* v. *Flagg*, 29 N. J. L. 25 ; *Kinstead* v. *Avery*, 4 Paige, 1.

*Clayton & Clayton*, for the appellees.

1. There was no error in the decree condemning the land for sale for the purchase-money due by the Merritts. This court has decided that the payment enforced through the Chancery Court proceedings in the case of *Wiley* v. *Merritt* was void, because Wiley was dead when the suit was commenced. *Clayton* v. *Merritt*, 52 Miss. 353. The legal title to the land is in Wiley's heirs.

2. Harkreader was not a purchaser in good faith. *First*, because, tracing title through the Merritts, he only got such as they had, which was none, the delivery of Wiley's deed to them being a nullity, and the deed absolutely void. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 674 ; *Brown* v. *Brown*, 4 Law & Eq. 377. A purchaser in good faith must be a purchaser of

the legal title. And, *secondly*, the circumstances were sufficient to put Harkreader on inquiry. *Deason* v. *Taylor*, 53 Miss. 697.

3. The position that Wiley's deed was delivered as an escrow, and became operative by the second delivery to the Merritts, cannot be maintained, because it was never delivered as an escrow ; and it was never delivered to the Merritts at all. If an escrow, it was on the condition that the money should be paid before the second delivery, which was never done. Shep. Touch. 58, 59 ; 3 Washb. on Real Prop. 270.

4. Harkreader is not an innocent purchaser, because his grantors had obtained possession of the deed from Wiley without the latter's consent. *Everts* v. *Agnes*, 4 Wis. 356 ; 6 Wis. 453 ; *Block* v. *Shreve*, 13 N. J. L. 458 ; *Dison* v. *Bradshaw*, 23 Cal. 536 ; *The People* v. *Bostwick*, 32 N. Y. 450 ; *Smith* v. *South Royalston Bank*, 32 Vt. 341.

5. The attempt to prove that the note belonged to Drane, and that the payment to his administrator was proper, failed, the evidence showing the contrary.

6. Neither the Merritts nor Harkreader can set up the tax title against the claim of the complainants. *Gaskins* v. *Blake*, 27 Miss. 675 ; *McLaughlin* v. *Green*, 48 Miss. 207 ; Blackw. on Tax Titles, 399. But the sale for taxes having been made on the 7th of August, 1871, is void. *McGee* v. *Martin*, 53 Miss. 519.

*Blair & Clifton*, on the same side, filed a brief discussing the points in the case, and citing the following additional authorities : —

1. On the point that the Merritts had no title by the proceedings in the case of *Wiley* v. *Merritt: Parker* v. *Horne*, 9 Geo. 215 ; 6 Smed. & M. 207 ; Walk. 30 ; 6 How. 234 ; 8 Smed. & M. 505. And that they got none by the pretended delivery of the deed to them : *Heard* v. *Roos*, 5 Curt. 204.

2. On the point that Harkreader is not an innocent purchaser : 4 Cushm. 281 ; 48 Miss. 359 ; 34 Miss. 741 ; 31 Miss. 16 ; 49 Miss. 258 ; 43 Miss. 358 ; 2 Pick. 199.

3. On the point that Wiley's deed was not delivered to

Drane as an escrow, and was never legally delivered to the Merritts: 2 Mass. 451; Greenl. Cruise, tit. "Deeds," 47, sects. 75, 76.

4. As to the tax title: *Hill* v. *Samuels*, 2 Geo. 707; 27 Miss. 675.

*J. A. Brown,* on the same side, filed a lengthy brief, citing the following additional authorities: —

1. On the point that the Merritts could derive no title through the proceedings in Wiley's name: *Allen* v. *Poole*, 54 Miss. 332.

2. On the point that the Wiley deed, having been abstracted from the court papers, conveyed no title: 52 Miss. 357.

3. That if the deed was held by Drane as an escrow, and by him delivered as such to the lawyers, their authority ceased upon his death: Story on Ag. 652, sect. 490; *Clark* v. *Richards*, 3 E. D. Smith, 92.

4. That the payment to the attorneys employed by Drane, after the latter's death, does not bind the representatives of Wiley: *Clayton* v. *Merritt*, 52 Miss. 353; *Gleason* v. *Dodd*, 4 Metc. 341; 1 Man. & G. 94; Eng. Com. L. Rep. 370.

SIMRALL, C. J., delivered the opinion of the court.

This case has been heretofore in this court, on appeal from the order of the chancellor sustaining the demurrer and dismissing the bill. The cause was remanded, that the heirs of Leroy Wiley, deceased, might be made parties. They were necessary parties, inasmuch as the object of the suit was to specifically enforce the contract of their ancestor, and they, therefore, would be interested in any question affecting the title to the land. The relief sought by the complainant, administrator, etc., of Wiley, was to collect the balance due for purchase-money, by a sale of the land, if the original vendees, the Messrs. Merritt, or their vendee, Harkreader, did not pay it. Many of the questions litigated in this appeal were settled on the former. See report of case, 52 Miss.

A brief summary of the case stated by the complainant is,

that the suit brought in 1868, in the name of Leroy Wiley, to collect the money by a sale of the land, and which resulted in a decree and sale, and purchase by the Messrs. Merritt, was instituted after the death of Wiley, and of consequence the entire proceedings, including the sale, were utterly null, and of no effect; and, therefore, the land may be subjected, in this suit, to the payment of the debt due to Wiley's personal representative. It is averred in the bill, and admitted by Harkreader in his answer to the amended bill, that Wiley, in 1867, signed, sealed, and acknowledged, in the State of Alabama, a deed in due form, and transmitted it to Col. Drane, to be delivered to the Messrs. Merritt on payment of the balance of the purchase-money; that Drane tendered the deed to them, and requested payment of the money; that they declined to pay; that thereupon Drane delivered the deed and the note to Tucker, Green & Pickens, for the purpose of bringing the proper suit. Harkreader states that the Messrs. Merritt bought under the decree, paid the bid to the solicitors, and received the deed from the commissioner; and that when they paid the bid, they withdrew from the files the deed from Wiley to themselves with the consent of the solicitors. He states that, at the date of the sale, neither the Messrs. Merritt nor himself knew of the death of Leroy Wiley; nor was he aware of it when he purchased from them on the 1st of January, 1872.

On these allegations, this defendant insists that he is a *bonâ fide* purchaser, without notice of Wiley's death, and of the invalidity of the decree and sale; and, secondly, that the withdrawal of the deed of Wiley, with the consent of Messrs. Green, Pickens & Tucker, the solicitors, invested them with the legal title, or the power to pass it to a purchaser.

It is plain that Wiley transmitted the deed to Drane, to be delivered to the Messrs. Merritt on payment of the money. The contract between the vendor and the vendees was, that the title should be retained until payment. Drane had authority to secure the money; in truth, the deed was sent to him that

he might make a demand of the money, efficient to complete the right of Wiley to subject the land to its payment, if the Messrs. Merritt were put in default. Drane so understood his duty to Wiley, for immediately he placed the papers in the hands of solicitors for suit.

Four days before they exhibited the bill against the Messrs. Merritt, Wiley died. His death, as held on the former appeal, put an end to the power of Drane or the solicitors to proceed further in the business. The rights of Wiley in the money and to the land had been transmitted to his personal and legal representatives. When the solicitors took the first step, they occupied no fiducial relation to Wiley; nor could they. In ignorance of his death, they conducted through the Court of Chancery a solemn farce in his name, as the living actor. The Messrs. Merritt, in the like ignorance, bought under the decree.

It is urged in argument, on behalf of Harkreader, that, conceding the Messrs. Merritt could not set up the deed of Wiley as against his heirs or devisees, nevertheless the deed was exhibited to him, as part of their chain of title, before he purchased; and, having bought in ignorance of Wiley's death, he is not chargeable with any of the circumstances that might be set up against them.

That brings us to the inquiry, whether Harkreader occupies a better position than his immediate vendors.

The final and complete act which makes a deed effectual is *delivery*. Whilst no specific formalities are necessary, the grantor must consent that the deed shall pass irrevocably from his control, and the grantee must accept it. If, from what occurs between grantor and grantee, a delivery and acceptance may be implied, it is equivalent to an actual delivery. It is the assent, express or implied, to the act, which gives it efficacy. *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 674. But, if the grantor make and seal an instrument as his writing or escrow, and deliver it to a third person, to be by him delivered to the grantee upon some future event, and it

be delivered accordingly, it is not the grantee's deed until the second delivery.  If the grantee obtains possession of it before the event happens, the grantor may avoid it on the plea of "*non est factum.*"    3 Co. 35 b, 36 a ; *Doe* v. *Knight,* 5 Barn. & Cress. 671 ; *Cecil* v. *Butcher,* 2 Jac. & W. 87. Although such deed generally takes effect from the second delivery, there are exceptional cases where it would relate back to the first.   The exceptions are founded on necessity, to prevent a failure of justice, — "*ut res valeat quam pereat.*" Some of these exceptions are enumerated in *Simpson* v. *Mc-Glathery,* 52 Miss. 724, and *Wheelright* v. *Wheelright,* 2 Mass. 453.   If delivery is to a stranger, to be transmitted to the grantee on conditions to be performed, the estate does not pass until the second delivery.   If the grantee gets the deed before the conditions have been complied with, the estate does not pass.   That is so because the grantor has not *consented* to the delivery.   As to him, the instrument has not lost its character as a mere written scroll.   Though having all the formalities of a complete instrument, it remains a scroll until the event has happened on the occurrence of which the grantor has agreed that it shall be effectual to pass the title. It would seem to follow that, if the grantee gets possession of the instrument surreptitiously, or on any other terms than fulfilling the conditions, there has not been a delivery with the assent of the grantor, and the title would not be conveyed.   The authorities are abundant in support of that proposition.   In *Beem* v. *McCusick,* 10 Cal. 538, it was said "that a compliance with the agreement was the *only* condition on which Beem, the grantee, could acquire the title ; " and, not having complied with the condition, the "title was void."   In *Dyson* v. *Bradshaw,* 23 Cal. 528, it was repeated that the grantee acquired no title by the deed, except on *strict compliance* with the conditions on which delivery was to be made.   *Black* v. *Steene,* 13 N. J. Eq. 455 ; 3 Washb. on Real Prop. 272.

Following the doctrine to its legitimate logical application,

the conclusion would be that a grantee who had got the deed without complying with the condition, not having title himself, could not convey to an innocent purchaser, who might have been misled by seeing the deed in his possession.

That precise question was presented in *Everts* v. *Agnes*, 4 Wis. 356. Here, the deed was left with Zetler as an escrow, with instructions not to be delivered until certain securities should be given by Agnes. Agnes fraudulently got possession of the deed, by inducing Zetler to deliver it, without executing the securities, and had it recorded, and sold to Swift for a valuable consideration, who was ignorant of the fraud. The court held that Agnes obtained no title, and "he could not convey any, by any conveyance he could make to another." The sum of the reasoning is, that obtaining the deed by fraud, larceny, *or any means short of the* performance of the condition, is against the assent of the grantor; and as assent is necessary to a delivery, and a delivery to the validity of the deed, the grantee got no title, and could not transmit any. If Swift purchased on the faith of the record, the answer was, the registration of an escrow did not give it validity as a deed. That case was afterwards reconsidered, and its doctrine reaffirmed. 6 Wis. 457.

Harkreader, as the vendee of the Messrs. Merritt, stands precisely in their shoes, and the doctrine of an innocent purchaser without notice has no application to him.

A deed contrived to injure and defraud creditors is the *deed* of the grantor; it has become complete by *delivery*. A purchaser from the fraudulent grantee, in good faith, without notice of the fraud, acquires the title, acquitted of the equity in favor of creditors of the grantor. The deed was competent to convey the title, subject to be avoided by creditors, provided they assailed it before it had been transmitted to a *bona fide* purchaser. So, a purchaser of the legal estate will hold it, discharged of all secret equities of which he had no notice. But in all cases where the plea of an innocent purchaser can be interposed, the party must have acquired the

*legal title,* which he thus attempts to protect against some undisclosed equity or charge on the property.   It is plain that Harkreader cannot take shelter under that plea, because he has not a *legal title* to the property.   That is still outstanding in the heirs or devisees of Wiley.   It is sufficient to rest this conclusion on the predicate that Wiley was not alive when the Messrs. Merritt got the deed.   Drane was dead also.

There are cases which hold, with great plausibility and force of reasoning, that if the agent of the grantor delivers the deed to the grantee without conditions performed, an innocent purchaser from the grantee will be protected.   *Blight* v. *Schenk,* 10 Pa. St. 293 ; *Pratt* v. *Holman,* 16 Vt. 530.   But it has been urged that Harkreader has the better equity.   We think that the superior equity is with the heirs and devisees, who have never realized the price of the land.   At all events, it is equal to that of Harkreader ; and when the equities are equal, the legal title will prevail.   4 Kent's Comm. 459 ; *Frost* v. *Beckman,* 1 Johns. Ch. 248 ; 1 Story's Eq. Jur., sects. 75, 76 ; *Everts* v. *Agnes,* 4 Wis., *supra.*   If Messrs. Tucker, Green & Pickens, the solicitors, had paid the money collected from the Messrs. Merritt to the personal representative of Wiley, there would have been a satisfaction of the debt, and the Merritts could not have been disturbed in their right.   Their equity would have been complete.   The payment of the money to Mrs. Drane, the administratrix of her husband, was unauthorized.

An effort was made to prove that Wiley, the testator, was indebted to Drane, and that the money was paid to Mrs. Drane because of that indebtedness.   The proof is quite clear that the estate of Wiley, through the executor in Georgia mainly, and partly by the administrator here, had paid this indebtedness, and that no credit inured to Wiley's estate because of the money handed to Mrs. Drane.   It was shown that she had never accounted for the money, as administratrix, in any way.

The respondents set up a tax title, derived through a sale

made to the State on the 7th of August, 1871. Their counsel, however, in this court do not much insist upon it. It was held in *Magee* v. *Martin*, 53 Miss. 519, that a sale on the 7th of August, 1871, for the taxes of 1870 was on an improper day, other than that fixed by the law, and conveyed no title. Nor could the Merritts, in possession as purchasers under Wiley, whose duty it was to pay the taxes, acquire a title, and set it up as adverse and paramount to that under which they entered. 27 Miss. 675 ; Blackw. on Tax Titles, 399, 400.

The facts herein (before recited), sufficient for the decision of this case, have been derived from the pleadings and proofs, independent of the depositions of Merritt and Harkreader, which were suppressed by the chancellor because of the alleged incompetency of the witnesses. It is unnecessary, therefore, to review his ruling on that question.

The respondents did not, by any of their defences, obviate the complainant's equity.

The decree is affirmed.