WILLARD HADLOCK, Appellant, *v.* SAMUEL HADLOCK, Appellee.

APPEAL FROM TAZEWELL.

A verdict in ejectment, which finds that the plaintiff is the owner of the land, is sufficiently explicit as to title.

Where a deed has been obtained surreptitiously and placed upon record by the grantee, nothing short of an explicit ratification of the deed, or such an acquiescence, after a knowledge of the facts, as would raise a presumption of express ratification, can give it vitality.

Where a judgment in ejectment does not award the plaintiff possession of the land, the Circuit Court at a subsequent term may correct it, or the Supreme Court may do so on appeal.

IN 1856, Samuel Hadlock commenced this suit in the Circuit Court of Woodford county, for certain tracts of land, described in the declaration. On the application of appellant, the venue in the cause was changed to Tazewell county, where, at the April term, 1858, the same was tried by jury, and a verdict and judgment rendered in favor of appellee; from which defendant appealed to this court.

The verdict finds the " defendant guilty of withholding the premises in the plaintiff's declaration mentioned, and that the plaintiff is the owner thereof, and assesses his damages at one cent "; and the judgment is, " It is therefore ordered and adjudged by the court, that the plaintiff recover of the said defendant the damages aforesaid, and the costs and charges by him about his suit expended, and that execution issue therefor."

Plaintiff offered a deed from David Hadlock to him, dated January 16, 1856, and recorded August 25, 1857, for the land in controversy.

The defendant objected to said deed, but it was admitted, and defendant excepted.

The plaintiff next offered two certificates, which are as follows:

" Pre., 1834.

LAND OFFICE AT SPRINGFIELD, ILL.,

No. 13,444.                                  November 2, 1835.

Received from David Hadlock, of Tazewell county, Illinois, the sum of one hundred dollars ———— cents, being in full payment for the W. 1-2 of the N. W. quarter of section No. 23, in township No. 28 north, of range No. 3 west of the third principal meridian, containing eighty acres and ———— hundredths of an acre, at the rate of $1.25 per acre.

$100.                                  JOHN TAYLOR, *Receiver.*"

" No. 19,253.                          LAND OFFICE AT SPRINGFIELD, ILL.,

September 19, 1838.

Received from David Hadlock, of Tazewell county, Illinois, the sum of one hundred dollars ———— cents, being in full payment for the E. 1-2 of the S. W. quarter of section No. 14, in township No. 28 north, of range No. 3 west of the third principal meridian, containing eighty acres and ———— hundredths of an acre, at the rate of $1.25 per acre.

$100.                                  JOHN TAYLOR, *Receiver.*"

*Benjamin Tounger*, plaintiff's witness, testified that he knew the premises; that David Hadlock was living on them fifteen or sixteen years ago; was in possession several years; don't know how long; that he, David, was in possession in 1849—claiming to be owner; supposed he remained in possession till 1850 or 1851; Willard then moved on the land, and is now in possession; did not understand he went on as a tenant; has been there since 1850 or 1851, claiming to be the owner of the land.

Defendant then gave in evidence a deed from David Hadlock to him, for the same premises, dated February 4, 1850, and recorded February 12, 1852. This deed was read without objection, and conveys the same land described in the plaintiff's declaration.

The plaintiff again called Benjamin Tounger, who testified as follows: I wrote the deed from David to Willard Hadlock; he

then resided on the premises; made the deed at David's request; Willard was there when it was acknowledged; understood it was to be kept in old man's possession until his death; understood so from the parties when the deed was acknowledged; I handed it to Willard, and he handed it, I believe, to the old man; who, I think, took and put it in his trunk; that was the last I ever saw of it until I saw it here this morning; as I understood it, the old man was dividing his land between his children, and gave Willard this as his portion. Don't remember anything being said about Willard's supporting the old man and his wife; the orchard was reserved to the old man as long as he chose to use it. (There was no consideration paid at the time the deed was made.) There was no agreement at the time the deed was made, that Willard should support the old man.

The evidence in parenthesis was objected to, and exception taken.

*James Edwards*, called by plaintiff, stated: Something over two years since, I had a conversation with defendant, at his house; my wife was present; Willard said the deed from David to him was made out and put in the old man's trunk; the old man went up to Samuel Hadlock's and was then taken sick with erysipelas, and that while he was sick, he, Willard, took the deed out of the trunk and got it recorded; told the old man he had given Benjamin Hadlock all his property to support him, and that he should go there for his maintenance, that he would not support him any longer; that the old man was sick at Samuel's, and he supposed he would die.

*Mrs. Edwards*, wife of James, testified to the same facts, and both stated they were on a visit at Willard Hadlock's at the time.

*Philip Denny*, called by plaintiff, stated: About two years since, Willard Hadlock told me that while the old man was sick at Samuel's with erysipelas, he had taken the deed from his trunk and got it recorded.

*Mrs. Denny*, plaintiff's witness, testified the same as her husband.

*Benjamin Hadlock*, called by defendant, testified: Some time after the 12th February, 1852, David Hadlock told me that he had given Willard up the deed for the land, and that he had got it recorded; that David, the old man, never was sick at Samuel's with erysipelas, but that he was sick at Willard's with that disease in March, 1852.

*Abner Mundell*, *William Crank*, *Tilton Howard*, *Thomas Pritchett*, and *William Dunn*, called by defendant, testified substantially to the same admissions, made at various times by David Hadlock, as those testified to by Benjamin Hadlock—and

all of which were said to have been made after the deed was recorded; and also that the old man, David, never was sick at Samuel Hadlock's, but was sick at Willard's with erysipelas in March, 1852.

*Francis Sweet* and *Abial Sweet,* called by defendant, testified: That while Willard and the old man were both living on the land in controversy, they went to the old man for some hedge plants; he told them he had given up the farm to Willard, and had nothing to do with them; they then applied to Willard.

The defendant read the deposition of *James Wagner,* taken by plaintiff. In this deposition the witness states that he was at the house of Willard and David about 1852; that he saw David take the deed out of the trunk and give it to Willard, and tell him to take it and do as he pleased with it. At this time Willard and the old man were living on the land together. At the time of taking the deposition, witness thought the old man between seventy-five and eighty years old.

*David Hadlock,* called by plaintiff, testified that he had never told Benjamin Hadlock, nor any other person, that he had delivered the deed, from himself to Willard, to said Willard Hadlock.

The following instructions were asked by the plaintiff, and given by the court:

" 4th.   If the jury believe the deed was taken from the possession of David Hadlock wrongfully and against his will, and placed upon record, the jury cannot infer a ratification of the deed from the mere delay of David Hadlock to prosecute for such wrongful act, unless the delay is so long as to bar the plaintiff by the statute of limitations."

" 5th.   To constitute a ratification in such case, it is necessary to show a full, free, and positive acknowledgment by David Hadlock that he had ratified and confirmed the deed, or such acts on his part as are equivalent to an express consent."

Exceptions were taken to these instructions.

The errors assigned are:

1.   Admitting improper and rejecting proper evidence.

2.   Entering judgment upon the verdict of the jury, the verdict not finding what estate appellee had in the premises.

3.   Entering judgment for damages and costs only, without rendering any judgment for the possession.

4.   In giving appellee's 4th and 5th instructions, and refusing instructions asked by appellant.

5.   In overruling appellant's motion for a new trial, the verdict being against law and the evidence.

N. H. Purple, for Appellant.

H. M. Wead, for Appellee.

Caton, C. J.   It has been repeatedly decided by this court, that a verdict in ejectment which finds that the plaintiff is the owner of the land, is sufficiently explicit as to the plaintiff's title.   It is equivalent to saying that he owns the entire estate in the land—the fee simple.   This verdict was good.

The two instructions, to the giving of which, exception was taken, we think were correct.   Where possession of a deed, which has never been delivered, has been surreptitiously obtained and placed upon record by the grantee, nothing short of an explicit ratification of the deed, or such an acquiescence, after a knowledge of the facts, as would raise a presumption of an express ratification, could give the deed vitality.   In this respect it would stand on the same footing with a forged deed.   If the party relied upon the statute of limitations, with possession under the deed, nothing less than the period required by the statute for possession would do, and certainly no less possession under the deed with the knowledge of the grantor, would raise the presumption of ratification; and we are far from expressing the opinion that that possession would have that effect.   The instructions were right.

Upon the merits of the case we do not hesitate to say, that we should have been better satisfied, had the verdict been for the defendant below.   But although we may be of opinion that the preponderance of the evidence was against the verdict, yet, the evidence was very conflicting, and there was an abundance to support the verdict, although we think there was much against it.   In such a case it is not our province to disturb the verdict.   We shall therefore let it stand.

The judgment is no doubt incomplete in not awarding to the plaintiff the possession of the land.   But the court could, at a subsequent term, have remedied this oversight by completing it, or this court, having the case before it, may do the same.   It will save costs to have this now done.   The judgment will be affirmed, and a further judgment will be entered here, that the plaintiff below recover the possession of the premises.

*Judgment affirmed.*