### D. STORMS ET AL. v. H. M. MUNDY

Decided April 10, 1907.

**1.—Practice—Cross Assignments of Error.**

Cross assignments of error not filed in the trial court can not be considered on appeal.

**2.—Brief—no Statement.**

The brief of appellant should set out enough of the evidence to enable the Appellate Court to pass intelligently on an assignment of error, and should also refer to the particular places in the stenographer's transcript where the evidence is to be found. The Appellate Court is not required to read the transcript to ascertain whether or not certain facts appear.

**3.—Purchase by Agent from Principal—Fraud—Vendee.**

In a suit by a principal to cancel a deed to land fraudulently obtained from him by his agent and to recover the land, a judgment against a vendee of the agent for the value of the land is improper when the land is lost to the owner by no ·fault of the vendee.

**4.—Lis Pendens—Payment of Rent.**

A lessee who after suit filed, or other notice of a claim to the land adverse to that of his landlord, pays rent to the landlord is liable to the true owner for the rent of the premises.

**5.—Loss of Land—Measure of Damage.**

When land fraudulently obtained from the owner is afterwards condemned for railroad purposes the measure of damage is the difference between the amount paid by the fraudulent purchaser and the amount received by him in the condemnation proceedings.

**6.—Condemnation—Parties—Payment of Award.**

Where a railroad company in condemnation proceedings has notice of another and adverse claimant to the land and fails to make such claimant a party to the proceedings, it pays the award at its risk. A judgment of condemnation is not binding on those not a party to the proceeding.

ON REHEARING.

**7.—Notice to Agent—Rule.**

The rule that notice to the agent is notice to his principal only applies to matters that come within the scope of the agency pertaining to the particular matter. It is immaterial what relation the agent may bear to the principal in other matters. Notice to an agent of matters which might require the exercise of discretion will not be imputed to the principal when the duties of the agent are purely ministerial.

**8.—Option to Purchase—Rights.**

One who exercises the right to purchase land under a valid option to do so after notice of an adverse claim can not claim the rights of a bona fide purchaser.

Appeal from the District Court of El Paso County. Tried below before the Hon. J. M. Goggin.

*M. W. Stanton,* for appellants Storms and Crawford.—It appearing from the undisputed evidence that J. J. Stewart was the duly authorized agent of the plaintiff, and that said Stewart acted as such agent of plaintiff throughout the entire transaction involving the sale of the land in controversy in this cause, and that neither fraud nor collusion by the said Stewart with Storms, Mautz or Crawford or with any one else having been either alleged or proved, and it further appearing that the said Stewart had notice at the time of said transaction of the alleged agency of Storms and his alleged fiduciary relation and fraud, notice of said facts to said Stewart was notice to plaintiff, and for this reason the court erred in its conclusions of fact and law, and said judgment rendered herein in favor of said plaintiff is erroneous. Irvine v. Grady, 85 Texas, 120; Peoples B. & L. Asso. v. Dailey, 17 Texas Civ. App., 38; Morrill v. Bosley, 13 Texas Ct. Rep., 529; Felsher v. Halenza, 68 S. W. Rep., 838; Taylor v. Flynt, 33 Texas Civ. App., 664; Cooper v. Ford, 69 S. W. Rep., 487; Campbell v. Crowley, 56 S. W. Rep., 373; Centennial L. Ins. Asso. v. Parham, 80 Texas, 518; Bunton v. Palm, 9 S. W. Rep., 182; Clark & Skyles on Agency, pp. 1039 to 1066, and 934, 632, 1048 to 1058; Mechem on Agency, sec. 718 to 731; Merchants Nat. B. v. Guilmartin, 44 Am. St. Rep., 182; Missouri, K. & T. Ry. Co. v. McFadden, 89 Texas, 146; Texas Land & M. Co. v. Cooper, 67 S. W. Rep., 176.

Defendant Crawford not having notice of the alleged fraud practiced upon plaintiff and of the equity claimed by plaintiff as growing out of the conduct and fraud of his alleged agent Storms, and the said Mundy having failed to offer to do equity or in any way pay for the improvements or pay the value of Crawford's ten year lease, was not entitled to recover damages in said cause, and especially against the defendant Crawford. Davis v. Ward, 50 Am. St. Rep., 29; Sheffield Land, etc., Co. v. Neill, 87 Ala., 158; Dillon v. Anderson, 43 N. Y., 232; Bank of Y. S. v. Davis, 2 Hill 451; Constant v. Home Mis. Soc., 53 N. Y. Supr. Ct. (21 Jones & S.), 170.

The conclusions of fact and law found by the trial court and judgment rendered thereon to the effect that plaintiff was entitled to recover the value of the land on the 28th day of August, 1903, together with the rental value up to said date, less the purchase price with interest, is erroneous in that such recovery is not the true measure of damages in this cause. George v. Hesse, 100 Texas, 44; George v. Hesse, 16 Texas Ct. Rep., 359; Pruitt v. Jones, 14 Texas Civ. App., 86; Smith v. Bolles, 132 U. S., 125; Sigafus v. Porter, 179 U. S., 116; Farmer v. Randel, 28 S. W. Rep., 384.

*Turney & Burges,* for appellant El Paso Union Passenger Depot Company.

*Seymour Thurmond* and *Foster & Williams,* for appellee—One who knew or might have known of the fraud of the grantor is not an innocent purchaser. Garahy v. Bayley & Co., 25 Texas, Sup. 295.

"One who purchases land with notice of an outstanding equitable title is subject to have the legal title decreed against him." Allen v. Root, 39 Texas 598.

"He who has simply made a contract of purchase . . . but has not paid the valuable consideration, is wanting in an indispensable element in the constitution of such a purchaser," (bona fide purchaser for value and without notice.) Fraim v. Frederick, 32 Texas, 308.

JAMES, Chief Justice.—On July 11, 1903, H. M. Mundy brought this suit against D. Storms to cancel a deed from himself to Storms, and also a deed from Storms to E. J. Mautz and to restore and quiet his title to a parcel of land in El Paso known as the triangle or "point," which is now a portion of the El Paso Passenger Depot Site, averring that Storms was the agent and attorney of plaintiff for the sale of the property; and in violation of the relation procured said deeds through fraud in order to vest the title in himself for less than the real value of the land; and also to require an accounting.

On July 31, 1903, plaintiff filed his first amended petition making the El Paso Union Passenger Depot Company and J. J. Crawford parties defendant, and on January 24, 1905, E. J. Mautz was made a defendant also. This last named pleading alleged that Storms on February 25, 1901, was the agent to plaintiff for the sale of this land and in other matters and his attorney at law in the transaction of various business matters for plaintiff; that on said date Storms informed plaintiff that he had a purchaser for said land,

one E. J. Mautz, for $900 cash, which land was then reasonably worth $1,800 or more, and plaintiff reposing confidence in said Storms as his agent and attorney at law and being in need of money cn February 25, 1901, executed at the City of Mexico a deed to Mautz and sent same to Storms, who, when he received it, procured a special warranty deed from Mautz to himself which bears date February 28, 1901, and recited the consideration of $900; that Mautz paid nothing for said land, and if he paid anything, it was only the sum of $100; that plaintiff's said deed was never delivered to Mautz, but was retained by Storms until both the said deeds were filed by him for record on March 20, 1901; that if plaintiff's deed was ever delivered to Mautz that he knew of Storms agency and was not entitled to receive the deed without paying the sum of $900, and that all said transactions were in fraud of plaintiff's rights, and both said deeds were procured by Storms in order to secure plaintiff's land for himself at much less than its real value and in violation of his duties to plaintiff. Plaintiff also alleged that he was ignorant of the fact that Storms had taken the title to the land in his own name and did not learn that fact until about July 6, 1903. That Storms had collected the rentals of said land during all of said time, the rental value being $100 a month, and that he had failed to account to plaintiff for the sum of $297.91 of the $900 purchase price; and that since the summer of 1903 J. J. Crawford and the Depot Company have been in possession of the property withholding it from plaintiff and claiming to be the owners thereof, and that Storms had executed a deed to Crawford and Crawford a deed to the Depot Company, and plaintiff has been by the wrongful acts of Storms deprived of the rental value thereof. That plaintiff was willing and offers to pay to Storms the sum he actually paid for the land and all other sums that may be justly due from him. That at the time of the commencement of this action, July 11, 1903, the premises were worth $6,000 and are now worth $9,000 exclusive of improvements.

Plaintiff further alleged that on March 1, 1901, the defendant J. J. Crawford entered into a lease or option contract with Storms to buy said property, that Crawford made certain improvements thereon which were of no benefit to plaintiff and which have been removed by Crawford, and that whatever rights Crawford acquired under such lease or option were acquired with full knowledge of plaintiff's rights, and he knew that Storms had no right to same against plaintiff and knew of said illegal acts of Storms and never paid any part of the purchase price agreed upon in said option until after the commencement of this suit, and after the pleading herein making said Crawford a party hereto.

Further, that on April 4, 1903, the said Depot Company filed a proceeding for the condemnation of said property making Storms and Crawford the sole defendants, that before the same came on for hearing plaintiff notified the Depot Company of his rights and asked it to amend and make plaintiff a party thereto, which it refused to do. That plaintiff on July 27, 1903, obtained leave to intervene and filed a petition of intervention therein, setting up his ownership and that he had brought this suit and asked that the award for the damages

be paid either to him the plaintiff or held by the court to await the final outcome of the present suit. That Storms and Crawford objected to plaintiff's intervening, and on July 28, 1903, the court revoked its order granting plaintiff leave to intervene, and plaintiff was no party thereto thereafter; and plaintiff alleged that said proceeding was illegal and void as to him.

The prayer was for cancellation of the said four deeds and the lease and option, etc., and the removal of cloud from plaintiff's title caused thereby and by the award and judgment in the condemnation proceeding, and that he recover of defendants the title and possession of the property. That an accounting be had between plaintiff and Storms, etc. That in the event Crawford or the Depot Company are held to have acquired said property as against plaintiff as innocent purchasers, then that he have judgment against Storms and Mautz for the reasonable value thereof, to-wit: $9,000. And if it should be held that the award and judgment in the condemnation proceeding are valid and binding on plaintiff to the extent of fixing the damage to the owner of the property, then that plaintiff, as the rightful owner, have judgment against the Depot Company, D. Storms and J. J. Crawford for the amount of the said award and judgment, to-wit: $6,000 and that he have judgment against each and all of defendants for the reasonable rental value of the premises, during the time the same were collected, received and enjoyed by them respectively, etc.

If it becomes necessary to state the pleadings of defendants, this will be done in connection with the assignments of error.

The cause was tried by the judge, his judgment being in favor of plaintiff against Storms, Crawford and the Depot Company for damages. The judgment fixes the value of the land on August 28, 1903, the date of the condemnation, at $3,500, and adjudges that plaintiff is entitled to recover that sum. Also the sum of $225 rental value of the land from February 28, 1901, to August 28, 1903, being at the rate of $90 per annum. That from the above aggregate, $3,725, should be credited the sum of $900 the consideration named in plaintiff's deed to Mautz dated February 25, 1901, which was shown to have been paid plaintiff, together with interest thereon to August 28, 1903, at 6 per cent. per annum, being $135 making a total credit of $1,035 leaving a net balance on August 28, 1903, of $2,690 which with interest from last named date amounted at the date of the trial to $3,123.54, and this sum it was adjudged that plaintiff recover of D. Storms, J. J. Crawford, and the El Paso Union Passenger Depot Company.

It was further decreed that the Depot Company recover of D. Storms and J. J. Crawford upon its plea over against them on their covenants of warranty, if it should be required to satisfy the judgment or any part thereof (not however to exceed as against Storms the amount of his warranty which was $1,200) and all costs. That plaintiff recover nothing as against Mautz.

The plaintiff's brief contains cross-assignments of error, which we are unable to consider for the reason that it does not appear that they were filed in the trial court, as required. The appellants are the Depot Company, and Storms and Crawford.

Assignments of error one to five inclusive also the 35th are all founded on the proposition that there was evidence that J. J. Stewart was plaintiff's agent in the transaction with Storms, up to the summer of 1903, and knew all the facts connected with the transaction, or in any event knew of facts which if investigated would have led to his knowledge of all of the transactions complained of, and therefore plaintiff was charged with knowledge thereof.

The trial judge was of opinion that if Stewart knew the facts evidencing the fraud complained of, his knowledge would not be imputed to plaintiff under the conditions that existed. We do not reach the question and therefore do not discuss it. To enable us to pass upon these assignments, appellants' brief should have stated the testimony showing that Stewart knew, or that he should have known of the fraud, and also referred us to the particular places in the stenographer's transcript where it would be readily found. This it fails to do. We quote to show what the brief, in connection with the first assignment, does in this respect:

"It also appears from the testimony of Storms, Stewart and Crawford that the said Stewart knew of the connection of Storms with the sale of the property and must have known that Storms took over the title by deed, that he knew that Crawford obtained the property and that Crawford immediately went into possession and begun to improve same, and in fact it is shown by the undisputed evidence that said Stewart knew of all the facts connected with said transaction involved from the time plaintiff was in El Paso in January and the first part of February, 1901, until the said Stewart left El Paso about the first of June, 1901, and in any event it appears that the said Stewart knew of facts which if investigated would have led to specific and accurate knowledge of all of said transactions. (St. of Facts pp. 179 to 213 and 217 to 274.)"

This method of briefing is not in accordance with the rules. We are not required, nor expected, to read a multitude of questions and answers constituting over a hundred pages of matter to ascertain whether certain facts appear or not, where if there was evidence of them, that particular evidence could have been identified and pointed out to us. The statements under the other four of these assignments are equally objectionable.

Assignments from six to fourteen inclusive and the 23rd and 34th attack the judgment rendered against defendant Crawford. We think that it is in some respects, to-wit, the judgment in favor of plaintiff against him in respect to the rents and also to the value of the land, erroneous. The findings of fact upon which the judgment was based do not find that Crawford colluded with Storms, or was a party to any fraud in the transaction. The evidence does not as a matter of law stamp his connection with the transaction as fraudulent, and as such matter would constitute a question of fact, he was not liable for damages upon that theory unless it was found as a fact that he was so guilty. The fact was not found. We infer that the court rendered judgment against Crawford for damages upon a different theory, viz: That having disposed of the property to the Depot Company (by purchase or condemnation) after he acquired knowledge

of plaintiff's equitable right, this dealing with the property and participation in the transaction rendered him liable, equally with Storms.

It appears from the evidence that Storms used the deed to Mautz which plaintiff sent him, as a basis for vesting the title in himself, by having Mautz, upon its arrival, execute a special warranty deed to himself; and thereupon, or soon after, he gave Crawford a lease for it for a long term at a rental of $90 a year, together with an option to purchase it at any time for $1,200 and $50 additional for each year. This lease and option ran on from early in 1901 until Crawford was made a party to this suit, and after that until the condemnation judgment in 1903 against Storms and Crawford, when the latter it seems exercised his option and paid Storms $1,250 for the land under his agreement.

If Crawford after knowledge of the facts had disposed of the land to an innocent purchaser, so that on account of his act plaintiff would have been deprived of his right, it might be said that he would be held liable to plaintiff for the latter's damages. But the findings of the Judge show that plaintiff's right to recover the land from the Depot Company was lost solely through the acts of plaintiff himself. But from this it appears that he lost no right through Crawford's disposition of the property and was in no different position than he would have been had Crawford not disposed of it at all. Hence we conclude that the judgment in favor of plaintiff against Crawford for the value of the land should be set aside.

The same assignments, or some of them, attack the judgment rendered against Crawford for the rental value of the premises. It was shown that he had use of the premises, and we think he would be liable to plaintiff for the rental value thereof, for all instalments that matured after he had notice of plaintiff's rights; and for such instalments as had matured previously in so far as he had not paid them to Storms. We think that inasmuch as he was not found guilty of collusion or fraud in the inception of the transaction, if he paid rent to Storms before notice of plaintiff's right to the land he should be protected in all such payments.

There is no finding of fact on the subject of notice to Crawford except that Crawford was joined as a party to this proceeding on July 31, 1903, which of course notified him on that date. The receipt of the award in the condemnation suit signed by Crawford and Storms was on August 21, 1903. Under the lease the $90 rent was payable annually after March 1, 1901, at the end of each year. It appears, and was found, that Crawford paid Storms the rent due March 1, 1902, and March 1, 1903, as provided in the lease. Under these circumstances we conclude that he could not be liable except for the rent from and after March 1, 1903. The judgment in this respect will be reduced accordingly.

All questions concerning improvements placed upon the premises by Crawford during his incumbency, are eliminated by the fact that they were removed by Crawford himself, and the damages as found referred to the land solely.

We find there was testimony to sustain the court's findings of fact in the matters referred to by the 16th and 24th assignments of error.

The assignments Nos. 15, 17, 18, 19, 20, 21, 22, and 25 all relate to the measure of plaintiff's damage. The measure adopted by the court was the difference between what Storms paid ($900) and the value of the land when it was condemned ($3,500) and the rents. Smitz v. Leopold 53 N. W. Rep., 719. The amount fixed and paid by the condemnation was $3,500 and this sum was found by the court to be its value also at the time of the trial of this cause. Appellee contended that the court should have consulted the $6,000 value, and cross-assignments of error are in his brief to that effect, but as we have said these are not properly before us, and appellee stands here in the position of being content with the judgment in this regard. Certainly appellants have no fault to find with the fact that the court did not adopt·the $6,000 standard. Appellants insist that the proper measure of damages was the difference between what Storms paid plaintiff for the land ($900) and its market value at that time, which the court found to be $1,200. This view they enforce by contending, 1st, that inasmuch as Mundy was found not to be entitled to recover the land itself, he could recover of Storms the profit wrongfully made by Storms upon his sale of it, which was the difference between $900 and $1,250. 2nd, that he could not recover more than the difference between the purchase price and the value of the land at the time of its sale by plaintiff, together with any additional profit made by Storms. 3d, that the increase in value of the land by a cause not contemplated, should not have been taken into consideration. As the courts will not uphold the conduct of an agent who uses his fiduciary relation to obtain his principal's property; and as Storms had not parted with his title to the property when the condemnation proceedings were had (Crawford having only a lease with an option to purchase, which option he did not exercise until the condemnation was had); and all the parties had notice prior to that time of plaintiff's right, unmistakably brought home to them through a suit to which they were parties; and furthermore, as the court found, plaintiff was the real owner of the land at the time of the condemnation, but on account of his conduct in connection therewith he had estopped himself from its specific recovery as to the Depot Company and would therefore be confined to his damages for his remedy, we see no reason why that damage should be estimated otherwise than on its value at that time.

We ascertain that there was evidence to sustain the finding that Storms was the agent and attorney of plaintiff for the purpose of selling the property, and therefore, we overrule the 26th, 27th, 28th and 29th assignments. There was evidence which sustains the finding, in effect, that Storms from the beginning of the transaction was the real purchaser, and therefore we overrule the 30th and 31st assignments. The 32d is overruled because it appears that Crawford did not exercise his option to purchase prior to notice. Also the 33d, for the reason that Mundy having been dismissed as a party from the condemnation proceeding he clearly was not bound by the judgment therein.

The 36th and 37th is that the undisputed evidence, or the great preponderance thereof is that plaintiff acquired knowledge, or by reasonable diligence, could have had knowledge that Storms had acquired the property, etc., and did not promptly disaffirm, therefore the judg-

ment was erroneous. One of the findings of fact is Mundy did not have such notice prior to about July 6, 1903, and it is supported by testimony.

The 38th assignment is not briefed with any regard to the rules. It is not a proposition of law in itself and is not followed by any proposition. It cannot be considered. Nor the 39th where the letter it complains of as hearsay, if to be found in the stenographer's notes is not pointed out. It might perhaps be traced if we read what appellant refers us to, viz: "The statement under preceding 38th assignment of error and the statement of the nature and result of the suit and statement under 1st, 4th, 7th, 8th, 15th, 26th and 28th assignments and propositions," but we cannot undertake that labor. Under the 38th assignment a letter of that date is referred to but no reference is there made to the place in the record where it may be found.

Not one of the remaining assignments of appellants Storms and Crawford, 40 to 52 inclusive, is briefed in accordance with the rules and they therefore are not considered.

In regard to the assignments of error by the appellant the El Paso Union Depot Company, we conclude:

Under the first assignment, that the Depot Company having received notice of plaintiff's right, should have seen to it that plaintiff was made a party thereto and should have appealed from the order dismissing him therefrom. By paying the award to Crawford and Storms without Mundy being a party to the judgment, under the circumstances, it did so at its risk. We observe that it did not pay the money to Storms and Crawford without taking deed with warranty of title from Crawford.

Under the second assignment which complains of the court not finding that Stewart had notice of the acts of Storms, and that accordingly plaintiff had notice, the brief does not point out where the evidence is to be found in the stenographer's notes with any more certainty than does the brief of appellants Storms and Crawford, in fact it refers to that brief for the purpose.

Under the third assignment it is contended that as the trial court determined that plaintiff was not entitled to recover the land he was therefore precluded also from damages against the Depot Company; and it is also contended that as plaintiff did not appeal from the condemnation judgment, he cannot recover of this appellant. A judgment of condemnation is not binding on those not parties to the proceeding, and in this instance particularly where the condemning party had notice of an outstanding claim adverse to the parties against whom it was proceeding to judgment. It was not necessary for plaintiff to appeal from the order dismissing his intervention, but it was necessary for the Depot Company to see that he was held in as a party, by appeal if necessary, unless it was willing to risk the consequences of paying an award to Storms and Crawford alone.

The judgment will be reformed as indicated, •and as reformed it will be affirmed.

*Reformed and affirmed.*

### ON MOTION FOR REHEARING.

The appellants D. Storms and J. J. Crawford strenuously question the action of this court in not considering the assignments one to five. We are still of opinion that they are not briefed upon the question they involve, in a manner that conforms to the rules.

In the event, however, the Supreme Court should regard it otherwise, we will here briefly give reasons why, as we think, the trial court did not err in holding that plaintiff was not chargeable through Stewart with knowledge of the fraud of Storms. Appellants in the present motion admit that they do not contend that Stewart had knowledge of the fraud, but contend that he had knowledge of acts of Storms, which, either of themselves were knowledge or, if pursued would have led to knowledge of the fraud, therefore Mundy his principal was charged with knowledge thereof

We recognize the principle that the agent is regarded as standing in the place of his principal within the scope of the agency, and the principal is affected with notice of what is presented to the agent the same as if he were acting in person. The question is, what was the scope of Stewart's agency in the sale of this property?

A reading of the testimony shows us that Stewart was not the agent of Mundy to negotiate nor to make this sale. The sale was initiated by Storms in communication to Mundy, and all that Mundy had Stewart to do was to see if he could not obtain an increase of fifty dollars in the price, and after that he notified Stewart to close the sale at the offer made, which Stewart proceeded to do. Mundy sent the deed direct to Storms. It matters not what relation Stewart bore to Mundy in other matters, the latter's relation to this particular transaction is all that is to be considered in determining the scope of his agency. It is clear to our minds from the evidence that this sale was transacted by Mundy himself, and that Stewart's connection with it was merely incidental, did not extend to the entire transaction, involved no discretion or authority, he simply doing the particular acts which Mundy specifically directed, which were to endeavor to get an increase of price, and then to close the matter as arranged by Mundy. This restricted relation of Stewart to the transaction we think prevents the operation of the rule contended for. In Pughe v. Coleman, 44 S. W. Rep., 578 this was held to apply to a case where the agent's power was simply to collect a note. See also Labbe v. Corbett, 69 Texas, 503. The duties imposed upon Stewart were purely ministerial in their nature and in our opinion his relation to the matter was not such as would place Mundy in the position of conducting this sale through Stewart as his representative.

In the motion of the Depot Company for rehearing it is claimed that if Mundy had no right to recover of Crawford because of Crawford's lack of notice, he being an innocent purchaser, the Depot Company stands in the same position. Mundy has filed no motion objecting to the judgment of this Court in respect to Crawford. That judgment, as well as the judgment of affirmance as to Storms, will not be disturbed. The question that arises upon the motion of the Depot Company is:

Was Crawford entitled to be protected because of his contract with Storms, as a bona fide purchaser? If he was, it would seem that no judgment would have been proper against either Crawford or his vendee the Depot Company beyond the purchase money unpaid by Crawford at the time he received notice of plaintiff's right. The contract that Crawford had made with Storms is described in the court's findings as follows:

"That on the first day of March, 1901, the said D. Storms executed a lease to the said J. J. Crawford, which lease contained an option to purchase in favor of the said Crawford at any time within two years for $1,200, and thereafter, for the further period of eight years, making ten years in all, to purchase for the said $1,200 with $50 added for each year elapsing before the exercise of such option to purchase. That the said lease was for ten years, and made in consideration of the payment to the said Storms by the said Crawford of an annual rental of Ninety Dollars per year, and payment by the said Crawford of the taxes falling due upon said property. That the said Crawford, under the terms of the said lease and option, had the right to erect upon the said property such improvements as he saw fit, and at the expiration of said lease, if he did not see fit to exercise his option to purchase the property under the terms of said option, it was the privilege of the said Crawford to remove his improvements from the property."

Crawford by taking the deed from Storms to himself exercised his option to purchase and thereby terminated his relation as lessee. His status as an innocent purchaser depends entirely upon whether or not his contract for an option to purchase, founded upon a consideration as it certainly was, placed him in the position to claim the rights of a bona fide purchaser. The case of Oil & Pipe Co. v. Teel, 95 Texas, decides the contrary.

The question just considered affects also a large part of the motion for rehearing in behalf of appellant Crawford. With these explanations the motions are overruled.

*Overruled.*

Writ of error refused.