SPOTTS et al. v. WHITAKER et al.

(Court of Civil Appeals of Texas. El Paso.
May 8, 1913. Rehearing Denied
May 29, 1913.)

1. DEEDS (§ 54*)—DELIVERY—FRAUD.

A deed is not effective unless delivered to the grantee with the intention by the grantor that it shall become operative, and a deed obtained from its depositary without the consent of the grantor through the fraud of the grantee is insufficient to pass title, and innocent purchasers or incumbrancers are protected only on the theory of estoppel, based on the negligence of the grantor resulting in the unauthorized delivery of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 116; Dec. Dig. § 54.*]

2. ESCROWS (§ 14*)—BOND FOR TITLE—DELIVERY—NECESSITY.

Where the obligee in a bond for title which is placed in escrow for delivery on compliance with conditions, procures a delivery of the bond through his fraud without the consent of the obligor, the delivery is insufficient, and persons claiming through the obligee acquire no rights in the absence of the obligor's negligence.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14.*]

3. ESCROWS (§ 14*)—BOND FOR TITLE—UNAUTHORIZED DELIVERY—EFFECT.

Where a bond for title was placed in escrow for delivery on compliance with an unacknowledged contract, the obligor, by failing to record the contract or to take any steps to protect third persons dealing with the obligee, was not chargeable with negligence, and third persons dealing with the obligee, who by fraud procured the delivery of the bond, acquired no rights as against the obligor.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14.*]

4. VENDOR AND PURCHASER (§ 215*) — BONA FIDE PURCHASER.

The title of an obligee in a bond for title is equitable, and subsequent purchasers, and incumbrancers take the same charged with all the defects to which it would be subject in the hands of the obligee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 449–452; Dec. Dig. § 215.*]

5. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—TITLE AND RIGHT OF PURCHASER.

A grantee of one to whom school lands had been awarded by the Commissioner of the General Land Office acquires an equitable title only prior to issuance of patent, but he may enforce rights which his grantor could enforce against third persons claiming under the grantor's obligee in a bond for title, based on the fact that the obligee procured delivery of the bond by fraud, and the mere failure of the grantee to pay to the state the annual interest installments does not impair his right to relief, until forfeiture has been made and entered by the land commissioner as provided by law.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, El Paso County; James R. Harper, Judge.

Action by D. E. Whitaker and others against E. B. Spotts and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Burges & Burges, of El Paso, for appellants. J. M. Pollard, W. M. Peticolas, and M. Nagle, all of El Paso, for appellees.

HIGGINS, J. This suit was brought by D. E. Whitaker to cancel a deed of trust executed by J. A. Roberts to A. F. Martin, trustee, for the use and benefit of various defendants, covering sections 21, 22, 23, and 24 in block 13, state free school land, situate in El Paso county, Tex. Upon trial before the court judgment was rendered in favor of plaintiff.

There is no statement of facts in the record, and it is here to be reviewed upon the trial court's findings of fact and conclusions of law. As gathered from these findings, the material facts pertinent to a consideration of this appeal are as follows: The above-described lands were sold and awarded to J. A. Hinson by the Commissioner of the General Land Office on April 6, 1907, and by deed dated February 16, 1909, recorded in El Paso county on February 22, 1909, J. A. Hinson conveyed the premises to J. C. Hinson. On April 20, 1910, the Commissioner of the General Land Office issued to J. C. Hinson a certificate of occupancy, and the same was recorded in the El Paso county records on April 25, 1910. By deed dated September 7, 1910, recorded in El Paso county September 12, 1910, J. C. Hinson conveyed the premises to D. E. Whitaker, reciting a consideration of $1 cash and exchange of other lands. The legal title to the premises remains in the state of Texas, no patent therefor having ever been issued, but the first payment of the purchase price and all interest payments have been made. On September 23, 1909, J. C. (Clint) Hinson as principal and J. A. Hinson as surety duly signed and acknowledged a bond in the sum of $7,500, payable to J. A. Roberts, the condition of which was "that if the said Clint Hinson who has sold to J. A. Roberts and is to convey four sections of state school land situated in El Paso county, Texas, to the said J. A. Roberts as follows, sections Nos. 21, 22, 23 and 24 in block No. 13, and as the required time of occupancy as is required by law is not completed or lived out; so as he, the said Clint Hinson, cannot execute lawful deed to the said J. A. Roberts, which he, the said Clint Hinson, will execute or cause to be executed said deed to said J. A. Roberts as soon as the same will be lawful; which will be at the expiration of three years from the time the said land above described was awarded to him; the said Clint Hinson and proof of occupancy shall have been made as the law requires: Then in such case this obligation to be void, otherwise to remain in full force." This bond for title by J. C. Hinson was placed in escrow in the hands of Northington & Son, who represented both Roberts and Hinson, and the same was to be by them delivered to J. A. Roberts when Roberts complied with the terms of a written contract for the conveyance to J. C. Hinson of certain lands in Brown and Comanche counties and when the title to these last-mentioned lands had been

approved by Hinson's attorneys. The Brown and Comanche county lands were to be conveyed by Roberts to Hinson by good title free of all liens and incumbrances, and the agreement to so convey was the consideration upon which above-mentioned bond for title was based. The contract for the conveyance of such Brown and Comanche lands by Roberts to J. C. Hinson was in writing, signed by J. C. Hinson and Roberts, witnessed by three witnesses, but was not acknowledged and was never recorded. Roberts' title to the Brown and Comanche county lands was never approved by Hinson's attorneys, and, as a matter of fact, he did not have good title thereto, and never tendered to Hinson any deed therefor. About 10 or 12 days after the delivery of the bond for title to Northington & Son, it was by these last-mentioned parties delivered to J. A. Roberts. Delivery of the same and possession thereof by Roberts was obtained through false and fraudulent representations made to Northington & Son by J. C. Roberts, agent of J. A. Roberts.

It seems that the delivery of the bond for title immediately became known to J. C. Hinson and to his agent, W. F. Whitaker, and that the agent, W. F. Whitaker, made some effort to recover possession of the bond for title. What efforts were so made, the findings do not disclose; but it is stated "that he did not place of record the contract for exchange of lands existing between said Hinson and said Roberts, and did not file any suit for the recovery of the land nor take any action in any court by filing a lis pendens or otherwise to notify persons dealing with Roberts of the fraud perpetrated in securing such bond for title, nor the fraudulent character of the title held by said Roberts." It also appears from the findings of fact that J. C. Hinson did not know that J. A. Roberts had given a deed of trust on the lands or had assigned the bond for title. By quitclaim deed, dated January 7, 1910, recorded January 31, 1910, J. A. Roberts reconveyed the premises in controversy to J. C. Hinson. After having obtained possession of the bond for title through the false and fraudulent representations aforesaid, J. A. Roberts filed the same for record in El Paso county, Tex., October 18, 1909, and the same was duly recorded in the records of that county. J. A. Roberts was the principal stockholder in the Famous Mercantile Company, one of the defendants herein, and was president thereof, and on November 19, 1909, J. A. Roberts executed and acknowledged a deed of trust to A. F. Martin, trustee, for the use and benefit of J. M. Radford Grocery Company, J. F. Wieser, and Farmers' State Bank of Coleman, Tex., to secure the payment of certain promissory notes of the Famous Mercantile Company and J. A. Roberts, payable to the said beneficiaries. The said deed of trust conveyed said premises to the trustee by warranty deed, and also assigned and trans-

ferred unto the trustee the bond for title above mentioned. This deed of trust was filed and duly recorded in the El Paso county records on November 22, 1909, and this suit was to cancel same.

At the time of the execution and delivery of said deed of trust, none of the beneficiaries therein named had any notice or knowledge of the fraud perpetrated in obtaining possession of the bond for title from Northington & Son, and they had no notice or knowledge of any title or claim of title asserted or held by J. C. Hinson in said premises other than that disclosed by the records; and it further appears that the indebtedness for which said deed of trust was given was an antecedent indebtedness, but the deed of trust was given in consideration of the beneficiaries refraining from the institution of bankruptcy proceedings against the Famous Mercantile Company and J. A. Roberts, and that such beneficiaries, in consideration of the execution of such deed of trust, granted an extension of time in which to make payment of the indebtedness secured by said deed of trust. The defendant S. J. Spotts indorsed all of the notes mentioned in the deed of trust at the instance of J. A. Roberts and in consideration of the execution of such deed of trust, and at the time of his indorsement S. J. Spotts did not have any notice or knowledge of the fraud perpetrated in obtaining possession of the bond for title, and did not have any notice or knowledge of any title or claim of title by J. C. Hinson to the premises other than that shown by the records of El Paso county. The intervener E. B. Spotts had no notice or knowledge of said Hinson's title or claim of title, nor did he have any notice or knowledge of abovementioned fraud. Prior to the acceptance of said deed of trust as security for the debts therein mentioned, the beneficiaries therein named and S. J. Spotts caused an examination to be made of the El Paso county records, and, finding the record title to the premises to be as represented by J. A. Roberts, they each accepted in good faith the deed of trust. E. B. Spotts became the legal owner and holder of the indebtedness due the Farmers' State Bank of Coleman mentioned in the deed of trust, and the amount thereof is the sum of $5,003.52; the amount due J. M. Radford Grocery Company on the note described in the deed of trust is $794.74, and to J. F. Wieser & Co. the sum of $994.86. S. J. Spotts is an indorser on all of said notes, and became such at the instance and request of J. A. Roberts, and is liable thereon. D. E. Whitaker at the time of his purchase of the premises in controversy from J. C. Hinson had notice, actual and constructive, of above-mentioned deed of trust and of the lien upon the said premises by virtue thereof claimed and asserted by the beneficiaries named in the deed of trust and by E. B. Spotts and S. J. Spotts. The consideration

for the conveyance of the premises from J. C. Hinson to D. E. Whitaker was the sum of $1 and the conveyance of certain lands in Tarrant county, and these Tarrant county lands were afterwards reconveyed by Hinson to Whitaker and no consideration for such reconveyance was shown to have been paid. Judgment was rendered in favor of Whitaker, canceling and annulling above-mentioned deed of trust, from which judgment J. M. Radford Grocery Company, J. F. Wieser & Co., E. B. Spotts, and S. J. Spotts have appealed, and the judgment is now before this court for review.

It is unnecessary to discuss in detail the various assignments of error, but we will state our views upon what is conceived to be the controlling issues in the case and which will dispose of all questions raised.

[1] Appellants urge that they were incumbrancers for value without notice of any fraud or defect in J. A. Roberts' rights under the title bond and as such should be protected. A deed, however, is not effective unless it has been delivered into the control of the grantee with the intention on the part of the grantor that it shall become operative, and a deed obtained from its depositary without the consent of the grantor, through the fraud of the grantee, is wholly insufficient to pass title, and parties claiming thereunder as innocent purchasers or incumbrancers will be protected only upon an estoppel based upon a showing that the grantor was guilty of negligence which brought about the unauthorized delivery. Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Link v. Page, 72 Tex. 592, 10 S. W. 699; Houston L. & T. Co. v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474; King v. Hill, 75 S. W. 550; 1 Devlin on Deeds, §§ 322, 323; 16 Cyc. 579, 581; 11 Am. & Eng. Enc. Law (2d Ed.) 348–350; Hadlock v. Hadlock, 22 Ill. 384; Henry v. Carson, 96 Ind. 412; Everts v. Agnes, 4 Wis. 343, 65 Am. Dec. 314; s. c., 6 Wis. 457; Berry v. Anderson, 22 Ind. 36; Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369; Smith v. South Royalton Bank, 32 Vt. 341, 76 Am. Dec. 179; Dixon v. Bristol Savings Bank, 102 Ga. 461, 31 S. E. 96, 66 Am. St. Rep. 193; Anderson v. Goodwin, 125 Ga. 663, 54 S. E. 679; Matteson v. Smith, 61 Neb. 761, 86 N. W. 472; Powers v. Rude, 14 Okl. 381, 79 Pac. 89; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; Franklin v. Killilea, 126 Wis. 88, 104 N. W. 993.

[2] When the possession of a deed has been thus surreptitiously obtained, the instrument stands upon no higher plane than a forged instrument. See Steffian v. Bank, supra; Houston L. & T. Co. v. Hubbard, supra; Hadlock v. Hadlock, supra; Henry v. Carson, supra. The same rule would apply in bond for title as in a deed. There is nothing in the record here to indicate that Hinson was guilty of any negligence whereby the delivery of the title bond was brought about and upon which an estoppel might be predicated, but it is expressly found that such delivery was procured through the fraud of the obligee therein.

[3] It is contended by appellants that a duty is imposed upon the grantor of such a deed to take active steps to protect subsequent purchasers or incumbrancers after he learns of the unauthorized delivery of his deed, and that, had Hinson filed for record the contract for the exchange of the Brown and Comanche county lands, the same would have disclosed to appellants the fact that the exchange of the lands was the consideration upon which the title bond was based, and would have put them upon inquiry to ascertain whether or not the conditions of the contract of exchange had been met and performed by Roberts, and that Hinson's failure to record the contract for the exchange of such lands constituted such negligence as would preclude him and his grantee, Whitaker, from recovery herein.

We are not prepared, without further investigation, to admit that any affirmative duty rests upon a grantor so defrauded to take active steps to put the world upon notice of the defect in the title of his supposed grantee; but, assuming in the instant case that such duty did rest upon Hinson, there is no basis for the contention that he should have recorded the contract indicated, as it was not an acknowledged instrument, and therefore could not properly be placed of record. In the absence of an express finding of negligence on Hinson's part in failing to take steps to protect innocent parties dealing with Roberts, this court could not grant relief to appellants predicated upon any such theory, and there is no such finding by the trial court. It is true the court found that Hinson did not resort to any legal proceedings to affect the world with notice, but this is not equivalent to a finding of negligence, as the circumstances may not have appeared to demand this or any other affirmative action upon his part.

[4] Another consideration which absolutely precludes appellants herein is the fact that the title of an obligee in a bond for title such as Roberts had is equitable in its nature and subsequent purchasers and incumbrancers take same charged with all of its imperfections and subject to all defects to which it would be subject in Roberts' hands. York v. McNutt, 16 Tex. 14, 67 Am. Dec. 607; National, etc., v. Teel, 95 Tex. 586, 68 S. W. 979; Slaughter v. Coke County, 34 Tex. Civ. App. 598, 79 S. W. 863; Texas, etc., v. Dublin, etc., 38 S. W. 404; Storms v. Mundy, 46 Tex. Civ. App. 88, 101 S. W. 258; Harper v. Hughes, 143 S. W. 715.

[5] The rule recognized in the cases cited is in no wise affected by the equitable maxim that between equal equities the first in time shall prevail. It is true, Whitaker's title is equitable in its nature, the legal title remain-

ing in the state, but he stands in Hinson's shoes, and the right of cancellation which he is seeking is a right to which Hinson would have been entitled had he not conveyed. It is therefore manifest that the maxim has no application.

For both of the reasons indicated we think it quite clear that appellants were not entitled to the protection which is ordinarily accorded to innocent incumbrancers for value, and that judgment was properly rendered canceling the deed of trust executed by Roberts.

Whitaker's failure to pay the annual interest installments due to the state on November 1st in the years 1910 and 1911 in no wise impaired his right to the relief which he sought therein. His delinquency in this respect concerned the state only and subjected the purchase of the land to forfeiture; but, until such forfeiture had been made and entered by the Land Commissioner in the manner provided by law, his title was not affected. The interest payments were made by E. B. Spotts, who made same to protect the title to the land upon which he was claiming a lien. The court in its decree protected him in these payments by fixing the amount of same as a lien upon the premises, and this was all that he could ask in this respect.

Affirmed.

HARPER, C. J., did not sit in this case.