### ALEXANDER et al. v. ANDERSON. (No. 1440.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 18, 1918.)

1. FIXTURES ⚫35(3)—ISSUES OF FACT—EVIDENCE.

In an action for the removal of fixtures, it was error to submit to the jury the question of fraud, accident, and mutual mistake in omitting reference to the fixtures from the contract of sale of the land, where there was no evidence raising such issue.

2. CONTRACTS ⚫94(4)—VALIDITY—FRAUDULENT REPRESENTATIONS.

When a party undertakes to ascertain for himself the contents of a contract, he will be charged with its stipulations, and that fraudulent representations were made will not justify him in relying on them, but he will be charged with the terms of the contract.

3. BROKERS ⚫94 — AGENCY — EXECUTION OF CONTRACT OF SALE.

A real estate agent who procured purchasers, took them upon land, and gave them the terms, but did not represent to them that there was a reservation of the buildings, was acting as agent for the owner and not for the purchasers, and the mere act of writing the contract did not confer power to make a contract with different terms.

4. BROKERS ⚫105—KNOWLEDGE OF BROKER AS BINDING ON PURCHASERS OF REALTY.

The knowledge of a real estate broker, acting as agent of the owner of land, prior to execution of a sales contract, as to whether cer-

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tain buildings on the land sold were to be excepted, does not bind the purchasers.

**5. PRINCIPAL AND AGENT ☞178(1)—IMPUTED NOTICE—KNOWLEDGE OF AGENT.**

Notice to an agent will be imputed to the principal only where the agent acquires his knowledge in the transaction of his principal's business.

**6. DEEDS ☞108—RELATION BACK—RIGHTS OF PARTIES.**

A deed, when executed, relates back to the date of the contract of sale of the realty and fixes the right of the parties as of that date.

**7. FIXTURES ☞21—CONVEYANCE.**

A conveyance of land by deed containing no reservation of fixtures passes title thereto to the purchaser, regardless of a verbal sale or disposition of such fixtures.

**8. EVIDENCE ☞413—WITNESSES ☞379(2)—IMPEACHMENT—PAROL EVIDENCE.**

In a purchaser's action against the seller of land for removing fixtures, evidence that the seller's agent, after the contract and deed had been executed, stated that the fixtures did not belong to the land, etc., could not affect the deed and contract and was not admissible as impeaching the agent's testimony that there was no reservation by the owner when the land was listed.

Appeal from Floyd County Court; W. B. Clark, Judge.

Action by C. A. Alexander and another against T. F. Anderson. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Kenneth Bain and A. P. McKinnon, both of Floydada, for appellants.

T. F. Houghton and B. B. Greenwood, both of Floydada, for appellee.

HUFF, C. J. This suit originated in the justice court, and upon appeal is brought to this court. The appellants, C. A. Alexander and Fred Dickert, sued appellee, T. F. Anderson, for damages, originally joining H. F. Casebeer, but subsequently dismissed him from the suit. The cause of action alleged is that appellants owned a section of land on which was a certain house, also 25 cedar posts, and 264 feet of lumber built into the fence adjoining the house on the premises; that appellee entered upon the premises on or about the 20th day of September, 1917, and without the consent of appellants removed therefrom the house and fence and converted the same to his use and benefit, setting out that the total value of the property so taken was $150, giving the items. Appellants also allege that on the 15th day of June, 1916, they entered into a contract with appellee Anderson, for the purchase of said section of land, at which time the house and fence were on the premises as fixtures, and

sold to appellants as such; that on the date of the contract Anderson executed to appellants a deed to the land, which was subsequently delivered to them; that they had no notice that the house and fence were subject to removal or that he did not own the same, but that appellee removed the house and fence, or caused the same to be done, thereby breaching his contract, for which act he was liable for the damages sued for. Appellee, after general and special exceptions, and general denial, pleaded in answer:

That there was a contract of sale entered into by appellee and appellants, through their agent, J. W. Fawver, "that by fraud, accident, or mistake the improvements sued for were not mentioned in said contract, but said improvements were fully reserved by this defendant at the time he listed said land with the then firm of Fawver & Seale, a firm composed of J. W. Fawver and J. A. Seale, and was fully understood and reserved and was not noticed until after the contract was executed, and when plaintiff came out to close the deal the matter of improvements sued for was fully discussed, and plaintiffs and J. W. Fawver and this defendant went out and went over the land for the purpose of seeing and investigating just what improvements did not belong to said land, as it had been explained to them on the day they first went to look at the land before any contract was ever made for the sale of the land."

The court instructed the jury to find for appellants if there was no fraud, accident, or mistake in the execution of the contract, but if the appellee reserved the improvements in the deed before the execution of the contract, and if it was not binding upon appellee, then to find for him. This was the only issue submitted by the court.

The facts show that on the 15th day of December, 1916, appellants entered into a written contract with appellee for the purchase of the land and premises in question. There was no mention made of the improvements here in question in the written contract, and no mention of them further than the agreement to convey the land and premises by good and sufficient deed, together with an abstract showing a good, merchantable title. The contract was signed by appellee and by Alexander & Dickert, by J. W. Fawver. A deed appears to have been delivered to appellants for the land some two weeks after the contract was executed. This deed is not in evidence or its terms shown. There appears to be no contention that there was a reservation of the improvements in the deed.

At the time of negotiating for the land, the appellants lived in Hill county and went to Floyd county, where this land is situated. Fawver and his firm had the land listed with them by appellee, Anderson, for sale. They procured the appellants as purchasers of the land and took them on the land to show it to

them. Both he and the appellants testify that he did not tell appellants that the improvements did not go with the land. Fawver testified, at the time of stating the terms of the sale to appellants, he did not know the improvements did not go with the land, and there was no such reservation mentioned to him by appellee in listing the land for sale. The appellants, after looking at the land, returned to Hill county, and after reaching there wired the agent, Fawver, that they would take the land on the terms stated to them by the agent, and that he could draw up the contract on such terms and sign their names thereto. The contract was so drawn and signed, and appellants put up $1,000 as forfeit, which was to be applied on the cash consideration. In about two weeks after the contract was executed, they returned to Floyd county, paid the balance of the cash consideration, $8,000, and executed four notes for $960 each, for the deferred payment, and assumed about $4,000 due on the land to a third party. Both appellants testify that, when they went to Floyd county to conclude the matter, they then learned for the first time that appellee claimed the improvements did not go with the land and that he so stated to them. They both testify they did not reply to his statement, but considered that they had a contract for the improvements, duly executed, and that they had placed up a $1,000 forfeit. Anderson swears the improvements in question did not belong to him and that he so told Fawver, the agent, with whom he listed the land, and instructed him to reserve them in the trade. His two sons corroborate him in this statement, claiming to have been present when their father so instructed the agent. One of the sons also testified that, when appellants were first on the land to look at it, they asked him what improvements went with the land, and that he then told them the improvements in question did not belong to the land. The facts show, when the contract was drawn and signed, appellants, or either of them, were not present, but only Anderson, Fawver, and the lawyer drawing the instrument. Appellee testified that when it was drawn up Fawver told him the contract contained the full agreement and said it was just like he had the land listed, and that he (appellee) relied on the contract reserving the shack and lot, and that he thought the reservation was in the contract until some time after he signed it. He also testified he was a very poor reader, but admits that he did read the contract, and also admits that Fawver also read it over to him. He admits that the contract in evidence was the contract signed by him and "guess it is just like it was when I signed it." Anderson and his two sons also testified that, when appellants came back to close up the trade after making the contract, he told appellants the improvements were not to go with the place, and that appellants requested that they go out on the land and see just what the improvements were, and that they did go, and that he showed them the improvements, and that they said this was all right, and that they would go back and close up. This is denied by the appellants. They claim that they relied on the contract and did not agree to the reservation and did not go to the land for the purpose of discussing the improvements, as above stated.

The first assignment will be overruled. We think there was no error in refusing to consider the exception to the answer of the appellee, filed and presented after the pleadings had been read to the jury; at least, no such error as to require a reversal of the case under the pleadings and circumstances immediately surrounding the ruling of the court thereon.

[1-4] Assignments 3, 4, and 5 assail the action of the court in submitting to the jury the question of fraud, accident, and mutual mistake in executing the contract, for the reason it is asserted there was no evidence raising such issue. In this we think appellants are correct. There was no reservation in the contract. There is no fraud shown which induced the appellee to sign the contract or deed. He shows by his testimony that he did not rely upon the representations of Fawver that the contract contained such reservation, but, on the contrary, he read the contract for himself and had it read to him. Appellee says he was not a good reader, but he does not show he could not understand when he did read, or that he could not understand when it was read to him. When a party undertakes to ascertain for himself the contents of an instrument, he will be charged with its stipulations, and the fact that fraudulent representations were made will not justify him in relying upon them; but he will be charged with the terms of the contract. Newman v. Lyman, 165 S. W. 136 (3); James v. Doss, 184 S. W. 623; Wright v. Bott, 163 S. W. 360. The facts establish that Fawver was the agent of the appellee in procuring appellants as purchasers for the land, and took them on the land and gave them the terms. He did not represent to them at that time that there was to be a reservation. While he was so acting, he was the agent of appellee, and what he did and said, in so far as appellants were concerned at that time, was the act of appellee. Appellants accepted the terms offered on the land, and all the terms of the contract were therefore made between appellee and appellant. The writing but spoke the agreement as made. The mere manual act of writing the contract did not confer upon Fawver the power to make a contract with different terms. He was only authorized to sign the names of the appellants to the contract which had been theretofore agreed upon.

What the agent ·may have known prior to that time did not charge the appellants therewith. If he knew the reservation was to be made, he learned that fact as the agent of appellee, and not as the agent of appellant. If he dealt fraudulently with his principal, the appellants were not charged with it. There was no accident in omitting the reservation from the contract because it was not intended to be included. There was no mutual mistake because appellants never agreed to the reservation, and further there could have been no mistake on the part of appellee because he read and had read to him the contract, and he certainly, under such circumstances, would be charged with the knowledge that the contract contained no ·such reservation. He was unwilling to rely upòn the representations of its contents as made by Fawver, but undertook for himself to ascertain the terms of the contract by reading and having it read.

[5-7] The eighth assignment complains at the refusal of the court to give that part of the third requested instruction, which is to the effect that appellants would not be charged with Fawver's knowledge of the reservation, if not communicated to them before entering into the contract. This proposition we believe to be correct. In placing appellant's ·name to the writing by Fawver, he was performing a mere ministerial act, which gave him no authority from appellants to make a ·contract or a different one to the one theretofore agreed upon. They had made the contract with him while he ·was standing in the place of appellee, and he had no authority to evidence by writing any other contract than that which was made while acting for appellee. Bank v. Bland, 189 S. W. 546 ·(6); Michaelis v. Nance, 184 S. W. 785 (3, 4); Storms v. Mundy, 46 Tex. Civ. App. 88, 101 S. W. 258. The doctrine of notice to the agent will be imputed to the principal is confined to those cases where the agent acquires his knowledge in the transaction of his principal's business. Knowledge which an agent has acquired in business other than his principal's cannot be imputed to the principal. Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1057; Kauffman v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Teagarden v. Godley Lumber Co., 105 Tex. 616, 154 S. W. 973. The evidence clearly shows Fawver was appellee's agent and not the appellants' when he was notified the improvements were not to go with the land. In this case the improvements were clearly fixtures and passed with the fee. There was no allegation

or proof that the fixtures were placed on the land under such circumstances as would made them personal property. The evidence may suggest that they might have been placed there by some other person under some sort of arrangement; but just what such arrangement was is not disclosed, so we cannot determine that they were placed on the land under such circumstances as would make them personal property. If in fact the house belonged to some one else, it might be that appellants, with notice of such fact, or right, before they paid the purchase money, could not defeat the true owner out of the property. This we do not attempt to determine, however, or decide at this time; but such fact ought not to defeat appellants in a recovery of pro tanto damages for breach of the contract. When the deed was executed, it related back to the date of the contract and fixed the right of appellee and appellants under the contract as of that date. Armstrong v. Gifford, 196 S. W. 723; Holloman v. Bishop, 197 S. W. 1000. It is the general rule that the conveyance of land by deed containing no reservation of fixtures passes title thereto to the purchaser, regardless of a parol verbal sale or disposition of such fixtures. Brown v. Roland, 92 Tex. 54, 45 S. W. 795; Potter v. Mobley, 194 S. W. 205. There is, however, a class of cases where property is placed on land under a previous arrangement, by which the right to remove it from the land is given, which treat such property as retaining the character of personalty. However, this record only presents for our decision the issue of fraud, etc., which was submitted to the jury, which we hold to have been error.

[8] We are also inclined to think the second assignment should be sustained. The testimony of Casebeer, with reference to a statement made to him by Fawver, after the contract and deed had been executed, to the effect that the house and fence did not belong to the land, etc., was objected to, and presented by bill of exception. This ·statement could not affect the contract and deed already executed. It was not admissible as impeachment of Fawver's testimony, to the effect that when the land was listed with him for sale there was no such reservation made by appellee. The mere fact that he was renting the land for appellants after they had purchased it did not make it admissible to impeach their conveyance of the property.

The judgment will be reversed, and the cause remanded.